2003 UT 12

William MILLER; Joshua A. Lee; Karl Blunck; Karen Blunck; Kacey Blunck; Marlo Chappel; Michele Morley; Molly Llewellyn; Amy Thomas; Citizens of Nebo School District for Moral and Legal Values, a Utah nonprofit corporation; Kristine Burningham; Lynda Thomas; and Jeana Barney, Plaintiffs and Appellants,

v.

Wendy WEAVER and Utah State Board of Education, Defendants and Appellee.

No. 20010065.

Supreme Court of Utah.

April 4, 2003.

Matthew Hilton, Springville, for appellants.

Richard A. Van Wagoner, Stephen C. Clark, Salt Lake City, for appellee.

WILKINS, Justice:

¶ 1 Plaintiffs [1] challenge the district court's dismissal of their first amended complaint

---

1. We use the term "plaintiffs" to reference the parties bringing this appeal, and "original plain-

against defendant Wendy Weaver (Weaver) for failure to state a claim upon which relief may be granted under Utah Rule of Civil Procedure 12(b)(6). We affirm.

## FACTUAL HISTORY

¶ 2 Since the party moving to dismiss a complaint admits the facts as alleged and challenges the complainant's right to relief based on those facts, we accept the material allegations of the complaint as true and recite them accordingly.[2] *See, e.g., Hall v. Dep't of Corr.,* 2001 UT 34, ¶ 2, 24 P.3d 958; *St. Benedict's Dev. Co. v. St. Benedict's Hosp.,* 811 P.2d 194, 196 (Utah 1991). Defendant Weaver is currently a tenured faculty member at Spanish Fork High School in the Nebo School District, Utah County, Utah. She began teaching physical education and coaching the girls volleyball team at the high school in 1979, and continued to coach the team until 1997. Weaver currently teaches psychology, which she has been doing since 1988, and it is her conduct as a psychology teacher that apparently inspired the first five counts of the complaint. Specifically, Weaver administered personality tests to her students, scoring and discussing the results of those tests in class, and also required her students to keep dream journals and interpret their dreams in class. Weaver criticized and disparaged the Church of Jesus Christ of Latter-day Saints during class and pressured a student to express his religious and moral beliefs in a hostile class environment. Additionally, Weaver encouraged students to question traditional sources of authority and determine for themselves whether alternative "lifestyles" are right or wrong.

¶ 3 Weaver is also a lesbian, a fact publicly revealed to residents of the Nebo School District in 1997. In the summer of 1997, the Nebo District School Board (school board) attempted to restrain her speech regarding her sexual orientation, and placed a memo-

randum in her personnel file to that effect. Weaver was also removed from her position as the girls volleyball coach at that time. In October 1997, Weaver filed a complaint in federal district court alleging violations of her constitutional rights; she ultimately succeeded in having the unlawful restraints removed and her coaching position reinstated. *See Weaver v. Nebo Sch. Dist.,* 29 F.Supp.2d 1279 (D.Utah 1998).

¶ 4 Soon after Weaver initiated her lawsuit in federal court, members of the community began submitting formal complaints about her to the school board. Joshua A. Lee, a plaintiff and student of Weaver, first complained to the school board on October 29, 1997. A petition signed by 3,000 school district residents "seeking specific redress" was presented to the school board on November 12, 1997. On December 16, 1997, another "specific request for action" was sent to counsel for the school district and the Utah Attorney General's Office by the Citizens of Nebo School District for Moral and Legal Values (Citizens of Nebo). That same day, counsel for the school district notified counsel for Citizens of Nebo that the school district would not take action within the time frame requested, and that Citizens of Nebo must pursue civil litigation to resolve their concerns.

## PROCEDURAL HISTORY

¶ 5 The original plaintiffs' first complaint was filed on December 23, 1997. A later, independent proceeding, which consolidated the original complaint and the first amended complaint, was initiated on May 26, 1998. We proceed based upon the contents of the first amended complaint since it was the foundation of the district court's ruling on appeal to this court. The original plaintiffs were present and former students of Weaver, students of Spanish Fork High School but not of Weaver, parents of students, grandparents of students, and taxpayers from the school district.[3] The defendants were the

tiffs" to reference the original parties to the action.

2.  Our recitation of the facts in this case is limited to those material to our decision. Additional factual background may be found in *Weaver v.*

*Nebo School District,* 29 F.Supp.2d 1279 (D.Utah 1998).

3.  Specifically, the named plaintiffs from the first amended complaint were Citizens of Nebo, William Miller, Donna Stevens, Joshua A. Lee, Karl Blunck, Karen Blunck, Kacey Blunck, Ron Ham-

Utah State Board of Education; Craig Jackson, Director of the Division of Occupational and Professional Licensing; Jan Graham, Attorney General of Utah; and Wendy Weaver. The first amended complaint set forth ten causes of action: Counts I, II, IV, VIII, IX, and X sought judicial declarations of whether Weaver had violated various state statutes governing the conduct of teachers and psychologists; Counts III, V, and VII sought judicial declarations of whether Weaver had violated several provisions of the Utah Constitution.[4]

¶ 6 The original plaintiffs then filed two motions for partial summary judgment. The State followed with a motion for judgment on the pleadings, and Weaver moved the court for dismissal under rule 12(b)(6). The original plaintiffs then filed a motion to amend the first amended complaint, and included a copy of the second amended complaint. After oral arguments on all of the pending motions, the district court granted Weaver's motion to dismiss seven of the nine remaining counts (Counts I, II, III, IV, VIII, IX, and X); the motion was also granted as to dismissal of four plaintiffs who were either grandparents of high school students or parents without high school students. The district court ruled that all six statutory claims failed to meet the requirements for a declaratory judgment action. The three constitutional claims, according to the district court, met all declaratory judgment requirements, but Count III was dismissed for failure to assert a valid constitutional interest. Weaver's motion was denied as to Counts V and VII; however, these claims were subsequently voluntarily dismissed to allow appeal of a final order disposing of all claims. The district court also granted the State's motion to dismiss Jan Graham and Craig Jackson as defendants, and granted the original plaintiffs' motion to amend the first amended complaint.

¶ 7 Plaintiffs on appeal comprise one taxpayer, four former students of Weaver, one

former Spanish Fork High School student, two parents of a former Spanish Fork High School student, and two former students of Weaver who were not a party to the first amended complaint. Weaver is the only defendant on appeal. Plaintiffs challenge the district court's ruling on Weaver's motion to dismiss, and present two issues for review: (1) whether the plaintiffs present legally sufficient claims for a declaratory judgment action, and (2) whether the complaints plead sufficient facts to establish a prima facie violation of the statutes and regulations at issue that would serve as a basis for declaratory judgment.

**STANDARD OF REVIEW**

¶ 8 As an appellate court, our powers of review are limited. In cases such as this, where a district court has granted a motion to dismiss after accepting the complaint as true and testing the legal sufficiency of the claims, we grant no deference to the district court's legal conclusions. We review the district court's legal ruling for correctness, and will affirm that ruling only if it is clear the plaintiffs' complaint fails as a matter of law. *First Equity Fed., Inc. v. Phillips Dev., LC,* 2002 UT 56, ¶ 11, 52 P.3d 1137. Furthermore, we "may affirm the judgment appealed from 'if it is sustainable on any legal ground or theory apparent on the record, even though such ground or theory differs from that stated by the trial court to be the basis of its ruling or action.' " *Id.* (quoting *Dipoma v. McPhie,* 2001 UT 61, ¶ 18, 29 P.3d 1225).

**ANALYSIS**

**I. STATUS OF THE SECOND AMENDED COMPLAINT**

¶ 9 At the outset, we must address plaintiffs' request for de novo review of both their first and second amended complaints in this case.[5] In their motion to amend the first

mond, Alisa Hammond, Kristine Burningham, Marlo Chappel, Michele Morley, Lynda Thomas, and Jeana Barney.

4. Count VI was voluntarily withdrawn with prejudice prior to the oral hearing on the parties' motions.

5. The plaintiffs asked this court to conduct a "de novo examination of the First and Second

amended complaint, the original plaintiffs attached a copy of their second amended complaint and stated that it was "filed contemporaneously with this motion." However, the second amended complaint was not actually date stamped and filed separately from the motion, and was not originally included in the record on appeal. Nor, for that matter, had the court yet granted leave to file the second amended complaint at the time it was proffered. Amended complaints that are filed without leave of the court are without legal effect; an attempted amendment cannot rise to the level of a cause of action until the court recognizes it as such. *Hansen v. Dep't of Fin. Insts.*, 858 P.2d 184, 186–87 & n. 3 (Utah Ct.App.1993) ("Amended complaints filed without leave of court are 'without legal effect and will not be considered.'" (quoting *Baxter v. Strickland*, 381 F.Supp. 487, 491 n. 4 (N.D.Ga.1974))).

¶ 10 The district court granted the original plaintiffs' motion to file second amended complaint at the same time it granted Weaver's motion to dismiss. Specifically, the district court stated that the "remaining Plaintiffs shall have 30 days from the date of this Ruling to file their Second Amended Complaint." The district court's ruling was exhaustive, addressing all of the elements of each claim and carefully indicating which parts of the first amended complaint should be further modified. The district court dismissed seven of the nine claims at issue in the first amended complaint and denied standing to at least four of the original plaintiffs. The remaining plaintiffs still had two valid constitutional claims to pursue and a roadmap for revising the claims that were dismissed.

¶ 11 By granting thirty days to the remaining plaintiffs to file a second amended complaint, the district court clearly indicated that it was not going to accept the previously proffered second amended complaint. The second amended complaint that the original plaintiffs had included with their motion merely added two plaintiffs and re-wrote two claims as one. It still contained all of the

original plaintiffs and almost all of the original statutory claims, without substantially changing any of the problems in the first amended complaint, and was wholly unresponsive to the district court's legal determinations.

¶ 12 Instead of filing a second amended complaint that conformed with the district court's ruling, the original plaintiffs sought clarification of that ruling. Clarification was denied. The original plaintiffs then voluntarily dismissed all of the claims that survived the ruling and sought a final, appealable order from the district court disposing of all remaining claims properly before the court. By choosing not to file a revised second amended complaint and instead pursuing an appeal of the ruling on the first amended complaint, the original plaintiffs rendered their previously proffered second amended complaint a nullity. *See, e.g., Williams v. State*, 716 P.2d 806, 808 (Utah 1986) ("Although [appellant] might have waived his right to amend the complaint and treated the order of dismissal as final, his filing of the amended complaint indicates that he did not intend to treat the dismissal as final.").

¶ 13 Plaintiffs have provided no legal support for their request that this court consider the entirety of both the first and second amended complaints. The second amended complaint stands before this court as an unadjudicated pleading. Because this court may only entertain appeals from a final judgment or order, claims or issues that have not been fully disposed of below cannot be considered. Utah R.App. P. 3(a); *Loffredo v. Holt*, 2001 UT 97, ¶ 11, 37 P.3d 1070. Thus, we decline to examine any arguments premised upon the contents of the second amended complaint. Furthermore, to the extent that plaintiffs' broad request indicates a desire for this court to consider claims that have been voluntarily withdrawn or dismissed, we do not do so in the absence of special exceptions, and will not do so in this case. *Barton v. Utah Transit Auth.*, 872 P.2d 1036, 1039 (Utah 1994).

---

Amended Complaints filed by appellants in this case," and to "reverse the trial court's dismissal of Appellants' First Amended Complaint and

those legal rulings that vitiated statutory and constitutional claims made in the Second Amended Complaint that have been appealed."

¶ 14 As an additional consequence of our holding on this issue, this appeal is dismissed as to Molly Llewellyn and Amy Thomas: these plaintiffs are improperly before this court because they were not parties to the first amended complaint and consequently not parties to the judgment on appeal.

## II. PROPRIETY OF A DECLARATORY JUDGMENT ACTION

¶ 15 The Declaratory Judgments Act grants a district court jurisdiction to determine any question of construction or validity of a statute that affects the rights, status, or other legal relations of any person and to declare that person's rights, status, or legal relations under the statute. Utah Code Ann. § 78–33–2 (2002). While the power of Utah's judiciary is not constitutionally restricted to "cases" and "controversies," we still require four threshold elements to be satisfied before we may proceed with a declaratory judgment action: (1) a justiciable controversy, (2) parties whose interests are adverse, (3) a legally protectible interest residing with the party seeking relief, and (4) issues ripe for judicial determination. *Jenkins v. Swan*, 675 P.2d 1145, 1148 (Utah 1983). Stated another way, "[a] justiciable controversy authorizing entry of a declaratory judgment is one wherein the plaintiff is possessed of a protectible interest at law or in equity and the right to a judgment, and the judgment, when pronounced, must be such as would give specific relief." *Baird v. State*, 574 P.2d 713, 716 (Utah 1978) (internal citation omitted). We conclude that this case is non-justiciable for at least two reasons: it lacks a plaintiff with a protectible legal interest, and it would fail to produce a judgment that would serve a useful purpose or grant specific relief.

### A. Legally Protectible Interest

¶ 16 We first address the plaintiffs' argument that they possess a legally protec-

tible interest in the controversy. We have held previously that a declaratory judgment action may be maintained by a plaintiff who can show that "the justiciable and jurisdictional elements requisite in ordinary actions are present." *Lyon v. Bateman*, 119 Utah 434, 439, 228 P.2d 818, 820 (1951). The district court ruled that there were no express or implied private rights of action to support plaintiffs' statutory claims against Weaver. Plaintiffs argue on appeal that Utah Code Ann. section 53A–7–202 (1997) by itself grants a private right of action against a school district employee, and that the legislative history of the 1999 amendments, codified in section 53A–3–421 (2000), provides additional support for the existence of a private right of action.[6]

¶ 17 When interpreting a statute, this court looks first to the statute's plain language to determine the Legislature's intent and purpose. *Lovendahl v. Jordan Sch. Dist.*, 2002 UT 130, ¶ 21, 63 P.3d 705. We read the plain language of the statute as a whole, and interpret its provisions in harmony with other statutes in the same chapter and related chapters. *State v. Schofield*, 2002 UT 132, ¶ 8, 63 P.3d 667; *State v. Maestas*, 2002 UT 123, ¶ 54, 63 P.3d 621 (Regarding "whole statute" interpretation, the court stated: " 'A statute is passed as a whole and not in parts or sections and is animated by one general purpose and intent. Consequently, each part or section should be construed in connection with every other part or section so as to produce a harmonious whole.' " (quoting Norman J. Singer, 2A Sutherland, *Statutory Construction* § 96:05 (4th ed.1984))). We follow " 'the cardinal rule that the general purpose, intent or purport of the whole act shall control, and that all the parts be interpreted as subsidiary and harmonious to its manifest object.' " *Faux v.*

---

6. The language of the section upon which plaintiffs rely is virtually unchanged in the amended statute, and plaintiffs do not argue that the amendments change the purpose or intent of the statute. However, the amended statute does contain new language addressing standing and is recodified in a different part of Title 53A. Since plaintiffs appear to rely upon the 1997 version and do not argue for retroactive application of the 1999 amendments on standing or for an analysis of the recodification, we will rely upon and refer to the 1997 version of this statute. All other statutes that have remained unchanged since this case was filed will be cited to their most recent version.

*Mickelsen*, 725 P.2d 1372, 1375 (Utah 1986) (quoting Sutherland, *supra*, § 46.05).

¶ 18 Utah Code Ann. section 53A–7–202(1) (1997) reads as follows:

> No civil action by or on behalf of a student relating to the professional competence or performance of a certified employee of a school district, or to the discipline of students by a certified employee, application of in loco parentis, or a violation of ethical conduct by an employee of a school district may be brought in a court until at least 60 days after the filing of a written complaint with the board of education of the district, or until findings have been issued by the board after a fair hearing on the complaint, whichever is sooner.

Plaintiffs summarily assert that the statute contains two basic precepts: first, that it establishes a private right of action by or on behalf of a student against a teacher for violation of any statute that concerns the professional competence or performance, or ethical conduct, of a teacher, and secondly, that it establishes procedural limitations on those actions. We disagree. Section 53A–7–202 is a purely procedural statute, one that sets forth a mechanism for review and action by the local school board or State Board of Education before a civil claim, premised on a pre-existing legal right, is filed against a teacher. By its plain language, the statute reads as an unambiguous staying provision, and is properly limited in application only to those claims involving conduct over which the local school board or State Board of Education has some authority and may properly take action to deter or punish.

¶ 19 Plaintiffs urge us to read the phrase "[n]o civil action by or on behalf of a student ... relating to [enumerated categories] may be brought in a court ..." as creating a new cause of action, imparting new legal rights and duties to students and employees of our public schools. This imposes an unreason-able and unworkable construction, and requires us to infer language and meaning that does not appear on the face of the statute. What does appear is a description of the conduct and concerns that will be governed by the restrictions that follow. This phrase is expository, and its meaning is dependent upon further elucidation. Subsection (1) as a whole seeks to restrict pre-existing legal rights; it requires students or other proper plaintiffs to first file a written complaint with the local school board and then wait at least sixty days before they can pursue their civil action against a teacher. Subsections (2) and (3) of the statute detail further procedural requirements for dealing with complaints to the school board, such as a fifteen-day action period for referring the complaint to the State Board of Education and a second staying provision for civil action if the complaint is referred to the State Board of Education.[7] The primary thrust of the statute as a whole, its "manifest object," is procedure. Appropriately, the procedural requirements are effective only as to claims involving issues that the Legislature deems most appropriate for the local school board or State Board of Education to address.

¶ 20 In the absence of language expressly granting a private right of action in the statute itself, the courts of this state are reluctant to imply a private right of action based on state law. *Young v. Salt Lake City Sch. Dist.*, 2002 UT 64, ¶ 21, 52 P.3d 1230. *See also J.H. v. West Valley City*, 840 P.2d 115, 125 (Utah 1992) (holding that statutory standards for hiring police officers do not create "a private right of action for failure to follow any specific procedure in hiring police officers"); *Broadbent v. Bd. of Educ. of Cache County Sch. Dist.*, 910 P.2d 1274, 1277–80 (Utah Ct.App.1996) (holding that teacher does not have private right of action under the Utah Educator Evaluation Act to enforce its provisions); *Nielson v. Div. of*

---

7. Utah Code Ann. subsections 53A–7–202(2) and (3) (1997) read as follows:

(2) Within 15 days of receiving a complaint under Subsection (1), a local school board may elect to refer the complaint to the State Board of Education.

(3) If a complaint is referred to the State Board of Education, no civil action may be brought in a court on matters relating to the complaint until the State Board of Education has held a hearing and issued its findings or until 90 days after the filing of the complaint with the local school board, whichever is sooner.

*Peace Officer Standards and Training (POST)*, 851 P.2d 1201, 1203–04 (Utah Ct. App.1993) (holding that administrative rule does not give the public substantive rights in the disciplinary process for police officers). This reluctance is particularly strong when the Legislature has already designated a method of resolution through an administrative agency specifically empowered to handle issues such as the discipline or termination of teachers and police officers.

¶ 21 In this case, a method for remedying violations of the statutory guidelines already exists. We see no clear indication from the statute itself that a private right of action was intended as an additional remedy. Here, we must require more than a mere allusion to "civil action[s]" as evidence of a legislative intent to impart substantive rights. The Utah Code has many examples of the explicit language which creates such rights, none of which require anyone to add language or make inferences to impart the full meaning of the statute. *See, e.g.*, Utah Protection of Public Employees Act (The Whistleblower Act), § 67–21–4 (2000) ("An employee who alleges a violation of this chapter may bring a civil action for appropriate injunctive relief or actual damages."); Utah Uniform Securities Act, § 61–1–22 (2000) ("A person who offers or sells a security in violation of [enumerated statutes] . . . is liable to the person selling the security to or buying the security from him" and may sue at law or in equity.).

¶ 22 Furthermore, it would be inconsistent with the Legislature's statutory scheme to infer a private right of action against teachers in this case. The overall purpose of the Educational Professional Practices Act (EPPA), within which the statute in question is found, is to create the Professional Practices Advisory Commission (the Commission) and empower the Commission to hear complaints against educators regarding "immoral, unprofessional, or incompetent conduct, unfitness for duty, or other violations of standards of ethical conduct, performance, and professional competence." § 53A–7–110 (1997). The Legislature has declared education to be a profession and has created the Commission to

act as "the disciplinary arm" of the State Board of Education. § 53A–7–102 (1997); *Ambus v. Utah State Bd. of Educ.*, 858 P.2d 1372, 1374 (Utah 1993). The Commission is authorized, inter alia, to issue subpoenas, hold hearings, take evidence, warn or reprimand a teacher, and make recommendations to the Board of Education for further action. §§ 53A–7–110, –204 (1997) (recodified at § 53A–6–306 (2000)). Consistent with the authority vested in Utah's public education system as a whole, disciplinary action against a teacher, whether it involves warnings, reprimands, suspension or revocation of certification, or termination of employment, must be taken before the only bodies authorized to act in this regard: the local school district, the Commission, or the State Board of Education. "To allow [plaintiffs] a private right of action would be to override, by judicial fiat, a system which the Legislature has at least tacitly, if not expressly, sanctioned." *Broadbent*, 910 P.2d at 1280.

¶ 23 Plaintiffs also argue that a private right of action must exist because the State Board of Education is allowed to consider evidence from civil actions in disciplinary proceedings and may deny a license to anyone found guilty in a criminal, civil, or administrative action of "behavior evidencing unfitness for duty." We can find no indication from the statutory language, purpose, or overall scheme that in any way suggests that the ability to bring evidence from and of a civil trial into an administrative disciplinary proceeding consequently creates a new, legally protectible, interest in enforcing the regulatory statutes in question. Nor do plaintiffs offer any substantive analysis or authority for the proposition; thus, we cannot agree with plaintiffs on this point.

¶ 24 Likewise, we refuse to consider the legislative history of subsequent amendments to the statute offered by plaintiffs. "Unless the statute on its face is unclear or ambiguous, we find no need to delve into the uncertain facts of legislative history." *Visitor Info. Ctr. Auth. v. Customer Serv. Div., Utah State Tax Comm'n*, 930 P.2d 1196, 1198 (Utah 1997). We generally presume that any amendment to a statute indicates a legislative intent to change existing legal

rights and therefore is not a reliable indication of intent as to the earlier, unamended statute. *Id.* Plaintiffs present no argument to this court supporting the retroactive application of the 1999 amendments and appear to continue to rely not on the added language, but on the essentially unchanged portion of the statute. Thus, we decline to examine the legislative history for added illumination as to the Legislature's intent in this matter.

¶ 25 In conclusion, we hold that section 53A–7–202 does not grant a private right of action to students and parents of students to enforce statutory and regulatory requirements for public school employees. The students, former students, and parents of students before us on appeal lack a legally protectible interest in this controversy, and we affirm the district court's dismissal of Counts I, II, IV, VIII, IX, and X as to these plaintiffs.

### B. Justiciable Controversy

¶ 26 We additionally note that declaratory judgment would be improper in this case at the most fundamental level. The Declaratory Judgments Act provides courts with discretion to deny declaratory relief in appropriate situations:

> The court may refuse to render or enter a declaratory judgment or decree where such judgment or decree, if rendered or entered, would not terminate the uncertainty or controversy giving rise to the proceeding.

Utah Code Ann. § 78–33–6 (2002). We have stated time and again that the Declaratory Judgments Act does not authorize this court to issue mere advisory opinions or judgments regarding non-justiciable controversies. *See, e.g., Jenkins,* 675 P.2d at 1148–50; *Baird,* 574 P.2d at 716 (" 'Judicial adherence to the doctrine of separation of powers preserves the courts for the decision of issues between litigants capable of effective determination.' " (quoting 1 Anderson, *Declaratory Judgments* § 16 (2d ed.1951))); *Lyon,* 228 P.2d at 820 ("While the statutes authorizing courts to render declaratory relief should be liberally construed in order to provide prompt settlements of controversies and to stabilize uncertain legal relations, courts, nevertheless, must operate within the constitutional and statutory powers and duties imposed upon them. They are not supposed to be a forum for hearing academic contentions or rendering advisory opinions.").

¶ 27 In the case before us, we can see no way in which a decree by this court on any of the statutory issues before us would terminate the uncertainty or controversy between Weaver and any of the plaintiffs. Weaver would remain a teacher, students would continue to take her classes, and the school board would remain free to refuse action on plaintiffs' complaints. This court does not have the authority to fire Weaver or order the school board to do so; nor may we force the State Board of Education to take any action at this point. In fact, plaintiffs do not ask us to take any action of that nature. Their only request appears to be that we declare whether Weaver is violating the statutes and regulations in question. It is not our province to do so in this manner: resolution of the plaintiffs' complaint lies elsewhere. Plaintiffs cannot avoid the mandatory disciplinary procedures of the State Board of Education, and if they feel that the Board is failing to comply with its own procedures, plaintiffs must ask the court to compel the Board to act—not to act in the Board's stead. In truth, plaintiffs' requests are " 'for advisory opinions on multifaceted matters, answers to which could scarcely fail to proliferate rather than resolve controversy.' " *Baird,* 574 P.2d at 718 (quoting *Cranston v. Thomson,* 530 P.2d 726, 730 (Wyo.1975)).

¶ 28 This holding also disposes of the claims based on taxpayer standing. "This Court has long held that a taxpayer has standing to prosecute an action against municipalities and other political subdivisions of the state for illegal expenditures." *Jenkins,* 675 P.2d at 1153. We have granted taxpayers a right of action to enjoin unlawful expenditures or to prevent increased taxes or misapplication of public funds. *Id.* However, plaintiffs in this case seek only a declaratory judgment, not an injunction, and they are attempting to bring their action against an individual, not a political subdivision. As we stated above, a declaratory judgment issued by this court regarding Weaver's past con-

duct will not prevent the school board or State Board of Education from continuing to spend public funds as they see fit. The first amended complaint fails to present any claims for which a declaratory judgment would serve a useful purpose or terminate the controversy giving rise to these proceedings.

## III. CONSTITUTIONAL CLAIM

¶ 29 Despite the broad language employed by the plaintiffs in their request for relief from this court, *see supra* Part I, plaintiffs fail to offer any argument supporting a reversal of the district court's holding that there were no fundamental rights at issue in their sole remaining constitutional claim. Based on the total lack of analysis, we must presume that plaintiffs do not contest this holding. Consequently, we will not review the trial court's ruling that the fundamental parental rights asserted by plaintiffs were not protected by article I, section 25 of the Utah Constitution. *See, e.g., State v. Thomas,* 961 P.2d 299, 304–05 (Utah 1998); *Kelbach v. McCotter,* 872 P.2d 1033, 1035 (Utah 1994).

## CONCLUSION

¶ 30 We affirm the applicable portions of the district court's dismissal on the grounds that the first amended complaint presents a non-justiciable controversy and fails to assert a protectible legal interest. Since our holding disposes of all claims before this court, we need not address the second issue presented to us on appeal. Additionally, we grant Weaver her costs on appeal, but decline to award further relief based on the plaintiffs' "utter failure to address the substance of the [district court's] ruling." We note that while we repeatedly elected not to address issues that were inadequately briefed, we do not feel that plaintiffs' briefs were so lacking that further relief is necessary.

¶ 31 Chief Justice DURHAM, Associate Chief Justice DURRANT, Justice RUSSON, and Judge BILLINGS concur in Justice WILKINS' opinion.

¶ 32 Justice HOWE did not participate herein; Court of Appeals Judge JUDITH M. BILLINGS sat.