2005 UT App 22

**STATE of Utah, Plaintiff and Appellee,**

v.

**Jeffrey Don IRELAND, Defendant and Appellant.**

No. 20021053–CA.

Court of Appeals of Utah.

Jan. 21, 2005.

Debra Meek Nelson and Lisa J. Remal, Salt Lake Legal Defender Association, Salt Lake City, for Appellant.

Mark L. Shurtleff, Attorney Generals Office, and Jeffrey S. Gray, Assistant Attorney General, Salt Lake City, for Appellee.

Before Judges GREENWOOD, ORME, and THORNE.

OPINION

GREENWOOD, Judge:

¶ 1 Defendant Jeffrey Don Ireland appeals his conviction of unlawful possession or use of a controlled substance, a third degree felony. *See* Utah Code Ann. § 58–37–8(2)(a)(i) (2002).[1] Defendant alleges that the trial court misinterpreted the meaning of "consumption" under Utah Code section 58–37–2(1)(dd). Utah Code Ann. § 58–37–2(dd) (2002). We reverse.

---

1. Although the legislature has amended this statute since Defendant was charged, the amendments do not affect the outcome of this case. *See*

Utah Code Ann. § 58–37–8(2) (2002). Therefore, for ease of reference, we cite to the most recent version of this statute.

## BACKGROUND

¶ 2 On November 3, 2001, while driving a car in Salt Lake County, Defendant hit another vehicle, resulting in the death of its driver. While at a hospital following the accident, West Valley Police Officer Buchanan observed Defendant exhibiting what he regarded as symptoms of a person under the influence of a narcotic: constricted pupils, dry mouth, muscle tremors, deliberate, short sentences, and an unsteady gait. On this basis, Officer Buchanan obtained a search warrant to test Defendant's blood and urine for controlled substances. Notwithstanding the absence of any narcotic in Defendant's urine samples, Defendant's blood tested positive for marijuana and 0.1 mcg/ml of methamphetamine.

¶ 3 While the presence of controlled substances was detected in Defendant's blood, he did not have any paraphernalia or drugs packaged for use with him. Despite this, the State charged Defendant with unlawful possession or use of a controlled substance for the methamphetamine, a third degree felony, and driving with a measurable controlled substance in the body for the marijuana, a class B misdemeanor.

¶ 4 In a pretrial ruling, the court determined that it had jurisdiction over the possession or use of a controlled substance charge. The trial court concluded that " 'consumption' continued so long as the methamphetamine was being metabolized in [D]efendant's body." Furthermore, the trial court reasoned that, because Defendant was metabolizing the methamphetamine before, during, and after the accident, his unlawful possession or use of a controlled substance was committed at least partly within this state, and thus established jurisdiction. Defendant then pleaded guilty to both charges, but reserved the right to appeal the trial court's jurisdiction regarding the felony charge.

## ISSUES AND STANDARD OF REVIEW

¶ 5 Defendant presents two arguments in support of his contention that the trial court misinterpreted the possession or use statute. First, he asserts that the plain meaning of "consumption," as used in section 58–37–2(1)(dd) does not include a substance being metabolized in the body. Utah Code Ann. § 58–37–2(1)(dd). Second, he argues that the trial court violated his right to due process by improperly shifting the burden to him to show that the substance found in his blood was not consumed in Utah.

¶ 6 Both of Defendant's arguments hinge on his assertion that the trial court misinterpreted the statutory meaning of "consumption." As such, "[t]he proper interpretation of a statute is a question of law which we review for correctness, according no deference to the [judge's] legal conclusion." *State v. Redd*, 1999 UT 108, ¶ 10, 992 P.2d 986.

## ANALYSIS

### I. Plain Meaning of "Consumption" Under Section 58–37–2(1)(dd)

¶ 7 Defendant contends that the trial court erred in ruling that it had jurisdiction over the felony charge, determining that "consumption," as included in the definition of possession or use of a controlled substance under section 58–37–2(1)(dd), is an ongoing process in which the body physiologically metabolizes the substance. Utah Code Ann. § 58–37–2(1)(dd). This issue presents a question of first impression in Utah.

¶ 8 "When interpreting a statute, this court looks first to the statute's plain language to determine the Legislature's intent and purpose. We read the plain language of the statute as a whole, and interpret its provisions in harmony with other statutes in the same chapter and related chapters." *Miller v. Weaver*, 2003 UT 12, ¶ 17, 66 P.3d 592. When interpreting a statute, this court seeks to "avoid interpretations that will render portions of a statute superfluous or inoperative." *State v. Maestas*, 2002 UT 123, ¶ 52, 63 P.3d 621 (quotations and citation omitted).

¶ 9 Utah Code section 58–37–8(2)(a)(i) makes it unlawful "for any person knowingly and intentionally to possess or use a controlled substance." Utah Code Ann. § 58–37–8(2)(a)(i). The relevant part of section 58–37–2(1)(dd) defines "possession or use" under chapter 37 as "the application, inhalation, swallowing, injection, or *consumption*

... of controlled substances." *Id.* § 58–37–2(1)(dd) (emphasis added).

¶ 10 We first look to the ordinary meaning of "consumption." Black's Law Dictionary defines "consumption" as "[t]he act of destroying a thing by using it; the use of a thing in a way that thereby exhausts it." Black's Law Dictionary 312 (7th ed.1999). Webster's defines "consumption" as "the act or process of consuming[.]" Webster's Ninth New College Dictionary 282 (1986). Further, Webster's defines "consume" as "to do away with completely[,] ... to spend wastefully[,] ... to eat or drink esp. in great quantity[,] ... to waste or burn away[.]" *Id.*

¶ 11 Defendant argues for a narrow interpretation of "consumption." He suggests that, when looking at the surrounding nouns of the statute, "consumption" is a present tense nominal describing the introduction of a substance into the body, and not an ongoing metabolic process. We agree.

¶ 12 Had the Utah Legislature wanted to make the metabolization of controlled substances a crime in section 58–37–2(1)(dd), it could have done so by explicitly including it as it has done in other statutes related to controlled substances. Indeed, the Utah Code currently contains nine sections that use the term "metabolite" in connection with controlled substances.[2] *See* Utah Code Ann. §§ 41–6–44.10(1)(a), –44.12(2)(c), –44.6(2) (Supp.2004) (dealing with motor vehicles); *see also id.* §§ 53–3–220(1)(a)(xiii), –223(1)(a) (2002) (concerning public safety); *id.* §§ 34–41–101(2), –102(2), 34A–2–302(4)(a)(i) (2001) (relating to labor).

¶ 13 Statutes from other states support a narrow definition of the term "consumption." Michigan's impaired driving statute defines "consumed" as "to have eaten, drunk, ingested, inhaled, injected, or topically applied, or to have performed any combination of those actions, or otherwise introduced into the body." Mich. Comp. Laws. § 768.37(3)(b) (2004). Oregon defines "ingest" as "to consume or otherwise deliver a controlled substance into the body of a person." Or.Rev.Stat. § 475.984(3)(c) (2003).

And Texas defines "human consumption" as "the injection, inhalation, ingestion, or application of a substance to or into the body." Tex. Health & Safety Code Ann. § 481.002(21) (2004). The State, on the other hand, cites no statutes in support of their position that "consumption" is defined as including metabolization. Thus, we are unpersuaded that our legislature intended "consumption" under section 58–37–2(1)(dd) to include metabolization of controlled substances.

¶ 14 In addition, caselaw from this state and others supports this interpretation. In *State v. Sorenson,* a minor was arrested for unlawfully possessing alcohol when an officer smelled the substance on his breath during a traffic stop. *See* 758 P.2d 466, 467 (Utah Ct.App.1988). Notwithstanding the absence of alcohol on his person or a failed sobriety test, Sorenson was convicted of illegally possessing alcohol. *See id.* This court agreed with the trial court's finding "that the mere presence of alcohol on the breath or in the bloodstream does not constitute possession under the statute." *Id.* at 468. Further, this court remarked in a footnote that such a "position is consistent with well-reasoned decisions from other jurisdictions which have addressed the issue." *Id.* at 468 n. 2 (citing *State v. Lewis,* 394 N.W.2d 212, 217 (Minn. Ct.App.1986); *State v. Hornaday,* 105 Wash.2d 120, 713 P.2d 71, 76 (1986), *superseded by statute on other grounds* ).

¶ 15 Other state appellate courts have addressed this issue as well. In *State v. Flinchpaugh,* the defendant was involved in a car accident that resulted in the death of the other car's driver. *See* 232 Kan. 831, 659 P.2d 208, 209–10 (1983). A blood test revealed the presence of controlled substances. *See id.* at 210. Without presenting evidence as to how the substances were "introduced into the defendant's system," the State charged Flinchpaugh with possession of a controlled substance. *Id.* Affirming the lower court's dismissal of the charge, the Kansas Supreme Court concluded that "[o]nce a controlled substance is within a person's system,

---

**2.** A "metabolite" is "a product of metabolism[.]" Webster's Ninth New College Dictionary 745 (1986).

the power of the person to control, possess, use, dispose of, or cause harm is at an end. The drug is assimilated by the body. The ability to control the drug is beyond human capabilities." *Id.* at 211.

¶ 16 The Washington Supreme Court reached a similar conclusion in *State v. Hornaday,* 105 Wash.2d 120, 713 P.2d 71 (1986). In *Hornaday,* a minor was charged with illegal consumption or possession of alcohol. *See id.* at 73. The court analogized the alcohol in that case with narcotics, noting that "[o]nce a narcotic is injected into the vein, or swallowed orally, it is no longer in the individual's control for the purposes of possession." *Id.* at 75. Furthermore, the court concluded that "the terms 'consume' and 'possession' . . . do not include the stage at which the liquor has already been swallowed but is still being assimilated by the body." *Id.* at 76; *see also State v. Abu-Shanab,* 448 N.W.2d 557, 559 (Minn.Ct.App. 1989) (concluding that to " 'consume,' in the context of alcoholic beverages, means to drink, and that once drunk, alcohol is no longer being consumed.").

¶ 17 *Hornaday* has been cited as a case that exposes the "absurdity of defining the word 'consume' so as to encompass the metabolization of alcohol in the body." *State v. Preston,* 66 Wash.App. 494, 832 P.2d 513, 516 (1992). In justifying the result, the *Hornaday* court examined the impact of a contrary ruling. The court suggested that the broader interpretation of "consume" or "possess" would subject minors to prosecution if they ventured across state lines to drink legally in a neighboring state if, upon their return, there was any trace of alcohol still in their system. *See Hornaday,* 713 P.2d at 77.

¶ 18 While the State did not counter with cases supporting its broad conception of "consumption," it attempted to distinguish this line of cases, suggesting that they apply to consumption of alcohol and not drugs. Thus, the State advocated two definitions of "consumption": one for alcohol and one for drugs. We, however, do not think that the legislature intended two different meanings of "consumption" in the Utah Code. Furthermore, multiple definitions would be potentially confusing to the public's perception of what behavior is prohibited.

¶ 19 The State next argues that the narrow definition of "consumption" renders the other listed nouns—"application, inhalation, swallowing, injection"—superfluous. Utah Code Ann. § 58–37–2(1)(dd). However, it is more likely that "consumption" was included in section 58–37–2(1)(dd) as a catchall term to encompass novel methods of introducing a substance into the body. Indeed, drug users have proven most creative in discovering new ways to administer substances. Accordingly, we hold that "consumption" under section 58–37–2(1)(dd) is a method of introducing a substance into the body.

¶ 20 Furthermore, a contrary holding would subject "status criminals," such as drug addicts, to continuous guilt for possession or use of a controlled substance, "whether or not [they had] ever used or possessed any narcotics within the State." *Robinson v. California,* 370 U.S. 660, 666, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962) (holding that imprisonment of drug addict in a state where he never used any narcotic drugs would be cruel and unusual punishment in violation of Fourteenth Amendment). Additionally, with improved drug testing, such as hair follicle analysis, the State's broad definition of "consumption" could subject individuals to prosecution who used drugs months or even years prior because of the substance's continued presence in their bodies. *See* Major Samuel J. Rob, *Drug Detection by Hair Analysis,* 1991 Army Law. 10, 10–14 (describing the process of drug testing via hair follicle analysis). Hence, the trial court erred by adopting a broad definition of "consumption" to include metabolization.

## II. Due Process

¶ 21 Finally, Defendant argues that the trial court violated the due process clause of Article I, Section 7 of the Utah State Constitution, as well as the Fifth and Fourteenth Amendments to the United States Constitution, by improperly shifting to him the burden to show that the court lacked jurisdiction to hear the possession or use charge. Defendant asserts that the trial court erred by finding that "[i]n order to establish jurisdic-

tion, the State need not prove where the defendant ingested the methamphetamine."

¶ 22 To prosecute a person in Utah, the State must establish jurisdiction by showing that the offense was "committed either wholly or partly within the state," Utah Code Ann. § 76–1–201(1)(a) (2003), by a preponderance of the evidence. *See id.* § 76–1–501(3) (2003). At trial, the court relied on the broad definition of "consumption" that allowed the mere metabolization of a controlled substance while in the state to satisfy the jurisdictional requirements. We have rejected that view. Because the trial court used the broad definition, it improperly asserted jurisdiction over the possession or use of a controlled substance charge. As a result, we need not determine if the trial court erred by requiring Defendant to refute the State's assertion of jurisdiction.

## CONCLUSION

¶ 23 Consistent with statutes and cases from this and other jurisdictions, "consumption" under section 58–37–2(1)(dd) is a method of introducing a substance into the body. *Id.* § 58–37–2(1)(dd). The trial court erred in concluding that metabolization of a controlled substance earlier introduced constituted "consumption." Furthermore, because the State offered no evidence of where Defendant consumed the drugs, the trial court lacked evidence to establish that the crime of possession or use of a controlled substance took place in whole or in part in Utah. Therefore, the trial court erred in asserting jurisdiction.

¶ 24 Accordingly, we reverse Defendant's conviction on the felony unlawful possession charge.

¶ 25 I CONCUR: GREGORY K. ORME, Judge.

THORNE, Judge (concurring):

¶ 26 I wholeheartedly agree with the majority opinion, and write only to highlight my principal difficulty with the State's position. Under the State's view, the penalties associated with the dangers posed by drug use are stood on their head. A pedestrian arrested with a controlled substance in their blood—regardless of their activities at the time of the arrest—would be subject to a greater penalty than someone arrested for *driving* with a measurable amount of a controlled substance in their blood. *See* Utah Code Ann. §§ 58–37–8(2)(a)(i) (2003); 41–6–44(2)(a)(ii) (1998). The State argues that the legislature intended this result and that the legislature has the right and the authority to make this distinction. I agree that the legislature has both the right and the authority. But, in the absence of an express legislative statement supporting the State's position, we should avoid drawing problematic conclusions. *See Rowley v. Public Serv. Comm'n,* 112 Utah 116, 185 P.2d 514, 519 (1947) (stating " 'a purpose to disregard sound public policy must not be attributed to the lawmaking power, except upon the most cogent evidence, and it is the duty of the courts to render such an interpretation of the laws as will best promote the protection of the public' " (citation omitted)); [1] *Department of Human Servs. v. B.R.,* 2002 UT App 25, ¶ 9, 42 P.3d 390 (accepting parenthetically that "following the literal statutory wording is not required when to do so would defeat legislative intent and make the statute absurd" (quotations and citation omitted)).

¶ 27 Here, adopting the State's position would lead to the absurd result that the unlawful possession or use of a controlled substance, a felony, would become a *lesser-included offense* of driving with any measurable amount of a controlled substance in the

---

1. In further support of this principle, the *Rowley* court also stated:

   We have not overlooked the legal principle that if the intent of the legislature is by the statute made clear and certain, even though we may believe the legislation absurd and undesirable, we cannot substitute the judgment of the court for the judgment of the legislature. On the other hand, when the legislative intent is not clear and certain, and a literal interpretation of

the language of the statute gives an absurd result, then the court is justified in searching the enactment for further indications of legislative intent.

*Rowley v. Public Serv. Comm'n,* 112 Utah 116, 185 P.2d 514, 519–20 (1947). Here, the majority has ably divined the legislative intent underlying the statute, and in doing so has avoided an otherwise absurd result.

blood, a misdemeanor. Moreover, in those cases not involving a vehicle, the State's position amounts to imposing a greater penalty upon a sleeping, standing, or walking defendant who is in possession through presence in the blood, than upon a driver who is actively endangering others by operating a potentially deadly vehicle with a measurable amount of a controlled substance in the blood. Driving under the influence of alcohol or drugs creates a grave public safety concern, and the mayhem that results from it is one that the legislature clearly intends to punish harshly. It makes little sense to treat an offender who has prohibited drugs in his bloodstream less seriously if he moves behind the wheel of a vehicle, than if he merely chooses to walk to his destination. Adopting the State's position would create just such a result.

¶ 28 Accordingly, I concur.