2005 UT App 186

**James P. ALLEN, Petitioner,**

v.

**DEPARTMENT OF WORKFORCE SERVICES, WORKFORCE APPEALS BOARD, Respondent.**

No. 20040143–CA.

Court of Appeals of Utah.

April 21, 2005.

---

James P. Allen, Salt Lake City, Petitioner Pro Se.

Michael R. Medley, Dept. of Workforce Services, Salt Lake City, for Respondent.

Before BILLINGS, P.J., JACKSON, and ORME, JJ.

## OPINION

JACKSON, Judge:

¶ 1 James P. Allen seeks review of the Workforce Appeals Board's (Board) decision that he is ineligible for Trade Adjustment Assistance for Workers (TAA) under the Trade Act of 1974. *See* 19 U.S.C.A. § 2296 (1998). We affirm.

## BACKGROUND

¶ 2 Allen worked for nineteen years as a metallurgical engineer, a field that specializes in the extraction of minerals from ore. For eight years of that time, he was also a supervisor and manager. Before December 2002, when Allen's employer laid him off, Allen earned $87,500 per year.

¶ 3 Allen applied for numerous engineering jobs throughout the country, but could not find a position. Eventually, Allen enrolled in law school at the University of Utah. Allen applied to the Department of Workforce Services (Department) for reimbursement of his law school costs. Allen's law school expenses were much more than the highest amount that the Board had ever before approved. The Department rejected Allen's application because, as it informed him via form letter, his employment goals could not be met within the Department's cost or time limits or within reasonable proximity to where he lived. The Department recommended instead that Allen pursue either an advanced engineering degree or an MBA, both of which would cost one-third the amount of law school, could be completed much faster, and in the Department's view, were more "suitable."

¶ 4 Allen appealed to an administrative law judge (ALJ), who reversed and awarded him TAA benefits. The Department appealed that decision to the Board, which remanded the matter to the ALJ to elicit additional evidence. The ALJ then did not reach the merits of the case anew, but rather determined that the Department had stipulated and was estopped from contesting all but one issue. The Department again appealed to the Board, which again reversed the ALJ and reinstated the Department's original denial of Allen's application for benefits. Allen now seeks review of that decision.

## ISSUES AND STANDARD OF REVIEW

¶ 5 Allen argues that the Board incorrectly interpreted the law, that the Board incorrectly applied the law to the facts of the case, and that the Board's factual findings are in error. Although Utah courts have not specifically defined the applicable standard of

review for a state agency's interpretation and application of acts of Congress coupled with federal agency regulations, several cases have mentioned the point in dicta. *See e.g., Savage Indus. v. Utah State Tax Comm'n,* 811 P.2d 664, 667 (Utah 1991), *superceded* by statute on other grounds; *Utah Dep't of Admin. Servs. v. Public Serv. Comm'n,* 658 P.2d 601, 608 (Utah 1983), *superceded* by statute on other grounds as stated by *Grace Drilling Co. v. Board of Review,* 776 P.2d 63 (Utah Ct.App.1989); *Luckau v. Board of Review of the Indus. Comm'n,* 840 P.2d 811, 813 (Utah Ct.App.1992). We recognize that federal courts afford federal agencies greater discretion to interpret federal law. *See Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). But, in this case, the United States Department of Labor has given some of its authority to state agencies.[1] Nevertheless, we see no reason that the same standards that apply to state agency interpretations of state law should not apply here also.

¶ 6 Thus, "[i]n reviewing [an agency's] interpretations of general questions of law, this Court applies a correction-of-error standard, with no deference to the expertise of the [agency]." *Utah Dep't of Admin. Servs.,* 658 P.2d at 608; *see also Employers' Reinsurance Fund v. Industrial Comm'n,* 856 P.2d 648, 650 (Utah Ct.App.1993). Agency decisions that apply the law to facts are entitled to discretion and "are [only] subject to judicial review to assure that they fall within the limits of reasonableness and rationality." *Utah Dep't of Admin. Servs,* 658 P.2d at 610; *see also Morton Int'l, Inc. v. Auditing Div.,* 814 P.2d 581, 584 (Utah 1991), *superceded* by statute on other grounds. In contrast, we will overturn an agency's factual findings only if they are "not supported by substantial evidence when viewed in light of

the whole record before the court." Utah Code Ann. § 63–46b–16(4)(g) (1997).

## ANALYSIS

¶ 7 Under the Trade Act, the government offers assistance to certain displaced workers. Specifically, the program provides funds to retrain or relocate those workers. *See* 19 U.S.C.A. § 2296 (1998). The Trade Act provides that, if the TAA's six criteria are met, the United States Department of Labor should pay the worker's cost of retraining. *See id.* Through its rulemaking authority, the Department of Labor has passed the task of determining whether a worker is eligible for TAA on to state agencies. *See* 20 C.F.R. §§ 617.1–617.52 (2004). In Utah, the Department of Workforce Services makes such decisions, and its decisions can be appealed to the Board.

¶ 8 The Department "shall" approve a worker's training if the TAA's six criteria are met. *Id.* § 617.22(a). Those criteria are (i) "there is no suitable employment" available; (ii) "the worker would benefit from appropriate training"; (iii) the worker would have "a reasonable expectation of employment following completion of such training"; (iv) "training … is reasonably available to the worker"; (v) "the worker is qualified to undertake and complete such training"; and (vi) "such training is suitable for the worker and available at a reasonable cost." 19 U.S.C.A. § 2296(a)(1). The United States Department of Labor has promulgated extensive regulations that further define these criteria. *See* 20 C.F.R. § 617.1–617.52.

¶ 9 As initial matters, Allen asserts that the Board erred because it based its decision on matters to which the parties had stipulated. Parties are certainly entitled to stipulate regarding facts. *See* 73 Am.Jur.2d *Stipulations,* § 4 (2001). But, parties cannot make stipulations as to what the law is; that

---

1. We decline to address the propriety of the Department of Labor's action under *New York v. United States,* 505 U.S. 144, 188, 112 S.Ct. 2408, 120 L.Ed.2d 120 (1992) ("The Federal Government may not compel the States to enact. or administer a federal regulatory program.") and *Printz v. United States,* 521 U.S. 898, 928, 117 S.Ct. 2365, 138 L.Ed.2d 914 (1997) ("It is no more compatible with [the States'] independence

and autonomy that their officers be 'dragooned' … into administering federal law, than it would be compatible with the independence and autonomy of the United States that its officers be impressed into service for the execution of state laws." (citation omitted)). Neither party has raised the point, and we believe that it would not affect the outcome of this decision in any event.

is for the court to decide. *See id.* The issues that Allen asserts were stipulated include (a) whether the employment available to Allen constituted "suitable employment"; (b) whether the additional requirement for practicing law, i.e. passing the bar, means that Allen would not have "a reasonable expectation of employment following completion" of law school; and (c) whether law school is "appropriate" for Allen in the sense meant by the TAA. These issues necessarily involve interpretations of statutory provisions and application of law to fact, and as such, are questions of law about which the parties could have made no valid stipulation. Thus, the Board did not err in considering these issues.

¶ 10 Allen also argues that the Board exceeded its authority by basing its decision on matters that had not been raised by or before the ALJ in the initial hearing. The Board may affirm, reverse, modify, or remand a case to an ALJ. *See* Utah Code Ann. § 35A–1–304(2)(a)–(c) (2001). In his initial decision, the ALJ made findings only on the sixth criterion and ignored the other five necessary criteria. Accordingly, the Board was within its authority to remand to the ALJ to elicit the previously unestablished evidence. In the second round, the ALJ allowed the appropriate evidence. But, the ALJ decided erroneously that the parties had stipulated as to the other factors and did not address them. Hence, the Board did not exceed its authority by remanding the matter to the ALJ or in basing its decision on the statutorily required criteria.

¶ 11 As to the substantive matters, the Board determined that Allen's law school expenses could not be reimbursed under TAA because he or the training did not meet the first, second, third, and sixth criteria.

### A. Suitable Employment

¶ 12 The first criterion requires that "there is no suitable employment ... available" for Allen. 19 U.S.C.A. § 2296(a)(1)(A) (1998). " '[S]uitable employment' means ... work of a substantially equal or higher skill level than the worker's past adversely affected employment, and wages for such work at not less than 80 percent of the worker's

average weekly wage." *Id.* § 2296(e). The Department of Labor's regulations further specify:

> [t]his means that ... no suitable employment is available at that time for that worker, either in the commuting area ... or outside the commuting area in an area in which the worker desires to relocate with the assistance of a relocation allowance ..., and there is no reasonable prospect of such suitable employment becoming available for the worker in the foreseeable future.

20 C.F.R. § 617.22(a)(1)(i).

¶ 13 The Board argues that Allen has not shown that "no suitable employment is available" because the Board construes "available" employment to include all job openings in Allen's field, not just those that actually had been offered to Allen. The Board accepted the Department's evidence that in the Salt Lake Area there are annually ten to fifteen openings for engineers in Allen's "degree area" and sixty openings for engineering managers. The Board also notes that Allen submitted resumes to thirty-one prospective employers in response to advertised positions. Thus, the Board concluded that Allen has not satisfied this criterion.

¶ 14 We give no deference to the agency's interpretation of statutory provisions. "When interpreting a statute, this court looks first to the statute's plain language to determine the Legislature's intent and purpose. We read the plain language of the statute as a whole...." *Miller v. Weaver,* 2003 UT 12, ¶ 17, 66 P.3d 592 (citation omitted).

¶ 15 In this case, because the Department is bound by both, we read the statute together with the United States Department of Labor's regulations "as a whole." *Id.* The regulation's language, "[t]his means that ... no suitable employment is available at that time *for that worker,*" clearly refers to the worker as the particular individual whose case is considered. 20 C.F.R. § 617.22(a)(1)(i) (emphasis added). The regulation also specifies that to be "suitable employment" that "is available" it can be "in an area in which the worker desires to relo-

cate." *Id.* Employment in an area in which the worker does not desire to relocate is not included. Moreover, the language considers the worker relocating for employment. One would be more likely to relocate to a particular area if one had an actual job offer, rather than just knowledge of an opening, because relocating often represents a significant expense, inconvenience, and emotional sacrifice. These elements of the regulatory language—a focus on the individual worker, a consideration of the worker's desires, and a contemplation of the worker making a significant sacrifice—read together, indicate that "available" should be construed as an offer of employment, rather than simply a job opening.

¶ 16 For further guidance, we look also to the "ordinary meaning" of "available." *State v. Ireland,* 2005 UT App 22, ¶ 10, 517 Utah Adv. Rep. 17, 106 P.3d 753. Webster's Ninth New Collegiate Dictionary defines "available" as "present or ready for immediate use"; "accessible, obtainable"; or "qualified or willing to do something or assume a responsibility." *Webster's Ninth New Collegiate Dictionary* 119 (1986). A job offer fits both the first and third definitions, "ready for immediate use" and "willing ... to assume a responsibility" better than the Board's definition, and the second definition could support either meaning of the term. There is no dispute that Allen was not offered any position. Hence, reading the statutory and regulatory language together with the ordinary meaning of "available," we conclude that the Board erred in its construction of the regulation and ruling on this criterion.[2]

## B. Benefit From Appropriate Training

¶ 17 The second criterion requires that "the worker would benefit from appropriate training." 19 U.S.C.A. § 2296(a)(1)(B) (1998). "This means that there is a direct relationship between the needs of the worker

for skills training or remedial education and what would be provided by the training program under consideration for the worker...." 20 C.F.R. § 617.22(a)(2)(i).[3] The Board concluded that law school was inappropriate for Allen because the average starting salary for a law school graduate in this region is far below the Trade Act's goal of 80% of the worker's previous salary. *See* 20 C.F.R. § 617.22(a)(1)(i) ("[T]he term 'suitable employment means ... work of a substantially equal or higher skill level ... and wages ... not less than 80 percent of the worker's average weekly wage.").

¶ 18 This analysis requires that the agency determine the average starting salary for a recent law school graduate, which is a factual finding. Agencies have significant discretion in making factual findings; we will overturn an agency's factual findings only if they are "not supported by substantial evidence when viewed in light of the whole record before the court." Utah Code Ann. § 63–46b–16(4)(g) (1997). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Grace Drilling Co. v. Board of Review,* 776 P.2d 63, 68 (Utah Ct.App.1989) (quotations and citation omitted). The Board based its determination on evidence provided by the University of Utah College of Law. This evidence satisfies the substantial evidence requirements, and it was within the agency's discretion to make the factual findings based on this evidence.

¶ 19 The analysis of this criterion also requires the agency to apply the findings to the facts of this case, i.e., to assess whether the average should apply to Allen particularly. Agency decisions that apply the law to facts "are [only] subject to judicial review to assure that they fall within the limits of reasonableness and rationality." *Utah Dep't of Admin. Servs. v. Public Serv. Comm'n,* 658 P.2d 601, 610 (Utah 1983), *superceded by*

---

2. While we recognize that a court in another state has held differently, *see Marshall v. Commissioner of Jobs & Training,* 496 N.W.2d 841 (Minn.Ct.App.1993), we are not bound by that interpretation of this language, particularly where that court considered the meaning of "unavailable" more than the actual statutory language, *see id.* at 843.

3. Because neither party raised the issue, we will assume here that law school, a professional degree program, fits the definition of "skills training or remedial education." 20 C.F.R. § 617.22(a)(2)(I) (1986).

statute on other grounds. Allen argues that the agency erred in applying the average salaries to him because he is eligible to practice as a patent attorney, a more lucrative branch of law.

¶ 20 Both Allen's and the Board's positions are reasonable. "[A]s between two reasonably conflicting views, . . . [i]t is the province of the Board, not appellate courts, to resolve conflicting evidence, and where inconsistent inferences can be drawn from the same evidence, it is for the Board to draw the inferences." *Grace Drilling Co.*, 776 P.2d at 68. Thus, the Board's position prevails, and its conclusion that Allen has not demonstrated that he will "benefit from appropriate training" stands. 19 U.S.C.A. § 2296(a)(1)(B).

¶ 21 Even if we considered the Board's application of the facts to Allen's circumstances unreasonable, this criterion "includes the further criterion that the individual will be job ready on completion of the training program." 20 C.F.R. § 617.22(a)(2)(i). The Board concluded that law school would not meet this "job ready" requirement because, before Allen could practice law, he would have to take and pass the bar examination. Allen asserts that the Board misconstrues this meaning of this provision and that the bar exam should be considered part of the training program. Allen urges us to adopt a construction of the regulation that would limit programs that require some additional training or apprenticeship, instead of programs that require some further licensing.

¶ 22 We note that, at present, Utah requires that its prospective attorneys pass its bar exam, and it administers its exam only twice per year. Even after passing the exam, one cannot practice law until having been sworn into the bar. Assuming that Allen were to graduate in May, he could practice law no sooner than the October of that year. While we do not broadly hold that any additional certification or licensing requirement would preclude a program from qualifying, the plain meaning of "job ready" cannot include programs under which the worker would not be "ready" for over four additional months.

CONCLUSION

¶ 23 Allen has not shown that law school is the appropriate training for him and has failed to establish that he meets one of the six criteria required to qualify for TAA benefits. All six criteria must be met. Accordingly, we affirm.

¶ 24 I CONCUR: JUDITH M. BILLINGS, Presiding Judge.

¶ 25 I DISSENT: GREGORY K. ORME, Judge.