2004 UT 93

**STATE of Utah, Plaintiff and Respondent,**

v.

**Wade WILLIS, Defendant and Petitioner.**

**No. 20020703.**

Supreme Court of Utah.

Nov. 5, 2004.

Mark L. Shurtleff, Att'y Gen., Brett J. Delporto, Asst. Att'y Gen., Salt Lake City, and David H.T. Wayment, Provo, for plaintiff.

Margaret P. Lindsay, Patrick V. Lindsay, Provo, for defendant.

PARRISH, Justice:

¶ 1 Petitioner Wade Willis ("Willis") challenges the constitutionality of Utah Code section 76–10–503(2)(a), which prohibits certain "restricted persons," including those who, like Willis, are on probation for committing a felony, from possessing firearms. Willis contends this prohibition violates his individual

right to keep and bear arms, guaranteed by article I, section 6 of the Utah Constitution. The district court rejected his argument, as did the court of appeals. We granted certiorari, and now affirm.

## BACKGROUND

¶ 2 While on probation for evading a police officer, a third degree felony, Willis became a suspect in the alleged theft of a nine-millimeter handgun from the home of his brother-in-law, Jonathan Coones. Police officers conducted a search of Willis's home and found the gun in Willis's bedroom closet. As a result, Willis was arrested.

¶ 3 Willis was charged with a second degree felony under Utah Code section 76–10–503(2)(a), which prohibits restricted persons, as defined in subsection (1)(a)(ii) of that same section, from possessing firearms. Utah Code Ann. § 76–10–503 (2003). Willis moved to dismiss the charge on the ground that the statute violates his individual right to keep and bear arms as guaranteed by article I, section 6 of the Utah Constitution. After the district court denied his motion, Willis entered a conditional guilty plea to possession of a firearm by a restricted person, specifically reserving the right to appeal the denial of his motion to dismiss.

## ANALYSIS

¶ 4 A constitutional challenge to a statute presents a question of law, as does an issue of constitutional interpretation. We review both for correctness. *See Council of Holladay City v. Larkin*, 2004 UT 24, ¶ 6, 89 P.3d 164; *Midvale City Corp. v. Haltom*, 2003 UT 26, ¶ 10, 73 P.3d 334. When addressing a constitutional challenge to a statute, we presume that the statute is valid and resolve any reasonable doubts in favor of constitutionality. *Jones v. Utah Bd. of Pardons & Parole*, 2004 UT 53, ¶ 10, 94 P.3d 283. When interpreting our state constitution, we look first to the plain meaning of the constitutional provision at issue. *Grand County v. Emery County*, 2002 UT 57, ¶ 29, 52 P.3d 1148. "We need not inquire beyond the plain meaning ... unless we find it ambiguous." *State v. Casey*, 2002 UT 29, ¶ 20, 44 P.3d 756.

¶ 5 Willis bases his constitutional challenge to the statute on article I, section 6 of the Utah Constitution, which was amended in 1984 to read: "The individual right of the people to keep and bear arms for security and defense of self, family, others, property, or the state, as well as for other lawful purposes shall not be infringed; but nothing herein shall prevent the legislature from defining the lawful use of arms." Utah Const. art. I, § 6. In urging us to interpret this provision in such a way as to invalidate the statute under which he was convicted, Willis asks us to find a distinction between the right to use arms, which he concedes is subject to legislative regulation, and the right to merely possess arms, which he argues is absolute.

¶ 6 We decline to adopt the distinction advanced by Willis. Article I, section 6 is not so absolute as to prohibit the legislature from regulating the potentially deadly privilege of firearm possession by convicted felons. In reaching this conclusion, we find the language of the amendment to be sufficiently ambiguous as to require us to look beyond the text of the amendment itself. Because there is an absence of any evidence of an intent in either the legislature or the voting public to endow felons with a right to possess guns, we affirm the court of appeals. We also base our ruling on the canon that counsels us to avoid interpretations of the law that would yield absurd consequences. *See Jackson v. Mateus*, 2003 UT 18, ¶ 25, 70 P.3d 78.

¶ 7 Before its amendment in 1984, article I, section 6 read: "The people have the right to bear arms for their security and defense, but the Legislature may regulate the exercise of this right by law." Utah Const. art. I, § 6 (amended 1984). In contrast, the language of the 1984 amendment guarantees the right of the people to "keep and bear arms" and limits the legislature's role to "defining the lawful use of arms." *Id.*

¶ 8 Willis contends that the word "use" was chosen advisedly, designating a range of permissible regulation narrower than that denoted by the terms "keep" and "bear." According to his view, "use" entails some degree of immediate, active, and purposeful activity, such as aiming or firing a gun, which the legislature may lawfully regulate. It does not, however, include mere possession on a closet shelf.

¶ 9 In advocating his position, Willis also relies on the fact that the legislature employed the terms "use" and "possess" separately and distinctly in the statute under which he was convicted.[1] *See* Utah Code Ann. § 76–10–503(2). Willis might also have called our attention to the distinction between "use" and "possession" in interpretation of federal firearms regulation. Specifically, the United States Supreme Court has concluded, in interpreting 18 U.S.C. § 924(c), that the term "use" of a firearm connotes more than mere "possession," "storage," or the "inert presence" of a firearm, and in fact means "active employment" of the weapon. *Bailey v. United States*, 516 U.S. 137, 142–49, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995). Although Congress, in response to *Bailey*, amended § 924(c) to include possession as well as use, its response reinforces the distinction between use and possession. The lower federal courts have similarly interpreted the federal sentencing guidelines as distinguishing between "use" and "possession." *See, e.g., United States v. Purifoy*, 326 F.3d 879, 881 (7th Cir.2003) (holding that, in inter-

---

1. This point is of limited assistance in resolving the issue, however. Statutes defining criminal offenses often describe prohibited conduct by using a list of similar words in order to ensure that the statute is broad enough to encompass the full range of prohibited conduct. *Compare* Utah Code Ann. § 76–6–109(1) (2004) ("A person who commits any criminal offense with the intent to halt, impede, obstruct, or interfere with the lawful management, cultivation, or harvesting of trees or timber, or the management or operations of agricultural or mining industries is subject to an enhanced penalty ...."), *with id.*

§ 76–10–503(2) ("A Category I restricted person who intentionally or knowingly agrees, consents, offers, or arranges to purchase, transfer, possess, use, or have under his custody or control: (a) any firearm is guilty of a second degree felony...."). The fact that the statute utilizes two similar words in one of these categories does not necessarily imply that the legislature understood the words to have distinct or exclusive meanings. In any event, this statutory language is not determinative of the meaning of a word in our state constitution.

preting section 2K2.1(b)(5) of the United States Sentencing Guidelines Manual, "[t]he distinction between mere possession and actual use of the gun distinguishes the two crimes and justifies treating them as separate offenses").

¶ 10 These observations, along with a common sense understanding that "use" implies immediate purposeful activity, and therefore would not ordinarily include mere storage in a bedroom closet, lend some support to Willis's position. That support is limited, however, by the fact that the term, as used in the federal firearms regulations and sentencing guidelines, arises in contexts different from the constitutional provision before us. For example, by including possession in the term "use," a sentencing court would lose the ability to distinguish between someone who brandished a pistol when police found drugs in his possession and someone who merely kept an unloaded gun under the bed and his drugs elsewhere.

¶ 11 In rejecting the hard and fast distinction between use and possession urged by Willis, the court of appeals correctly observed that "one may 'use' a firearm by the mere act of possessing it—e.g., to deter unlawful behavior in 'defense of self, family, and others' etc." *State v. Willis*, 2002 UT App 229, ¶ 3 n. 3, 52 P.3d 461. Moreover, self-defense is not the only use that might be served by possession of a firearm. Collection, decoration, investment, and peace of mind are a few additional reasons one might have to possess firearms, and each reflects a use to which a firearm can be put while not being fired, brandished, or even transported. In each of these instances, it is accurate to say that a firearm is being "used" no less than when a bank robber pulls a handgun on a bank teller. In other words, when mere possession serves the possessor's purpose, the weapon is not only being possessed, it is also being used.

¶ 12 Both Willis's and the court of appeals' interpretations are plausible readings of the amendment. Because the plain language of the amendment is susceptible to two plausible readings, it is ambiguous. Therefore, we may go beyond the text by looking to evidence of "legislative history and relevant policy considerations." *In re Worthen*, 926 P.2d 853, 866 (Utah 1996).

¶ 13 Although evaluating evidence of legislative intent is inherently problematic, it is even more so in cases involving a constitutional amendment, where the relevant legislators include the voting public. Therefore, we evaluate both the legislative history and the relevant policy considerations to determine which interpretation is valid. Because felons were prohibited from possessing firearms or other dangerous weapons prior to the amendment, *see State v. Wacek*, 703 P.2d 296, 298 (Utah 1985), we examine whether there is any evidence that the amendment was intended to change the status quo and bring gun possession by felons within the ambit of constitutional protection.

¶ 14 Unfortunately for Willis, there is no such evidence. On the contrary, during the deliberation over the proposed amendment in the Utah House of Representatives, the sponsor of the amendment made statements indicating his intent that the amendment not alter the legislature's then-existing right to restrict felons from possessing firearms. *Utah H.R. Deb. on S.J. Res. No. 2* (March 7, 1983) (statement of Rep. Harrison).[2]

¶ 15 The amendment to article I, section 6 was ratified by the general electorate on November 6, 1984. Willis has produced no evidence, beyond the ambiguous text of the amendment itself, to suggest that voters expressed, or were exposed to, any suggestion, expectation, or intent that the amendment would guarantee to felons the right to possess firearms. Indeed, the only evidence is directly to the contrary. For example, the voter information pamphlet distributed to

---

2. *This exchange took place while considering an earlier version of the resolution that ultimately became the amendment. Willis argues that the views expressed are irrelevant because they were not articulated in consideration of the language that the legislature eventually approved for the amendment. It is true that this evidence, like all* legislative debate, is of limited import and does not approach decisiveness. The point nevertheless remains that there is no evidence in the legislative history to suggest the existence of an intent to extend the right of gun possession to felons.

voters in advance of the election contained a section labeled "Arguments for," which read in part:

The amendment specifically guarantees broad individual liberties and protects the enjoyment of those liberties from infringement. At the same time, the legislature may continue to enact laws against the misuse of arms and the police may continue to enforce such laws; enforcement would extend to seizing arms which are misused.

An individual right to keep and bear arms is guaranteed. *However, convicted felons, mental incompetents, minors, and illegal aliens would not be guaranteed this right. The principle of law that such persons may be excluded from the enjoyment of the right to keep and bear arms is well-established.*

*Utah Voter Information Pamphlet* 28 (1984) (emphasis added). Even the section of the pamphlet entitled "Rebuttal to" reflected this understanding of the intent behind the amendment, although it questioned the mechanism for achieving that intent. *Id.* at 29. As a result of the absence of any evidence suggesting that the amendment was intended to extend the right to keep and bear arms to convicted felons, we reject Willis's proposed interpretation.

¶ 16 An equally compelling reason for rejecting the interpretation urged by Willis is the principle that constitutional provisions should be interpreted to avoid absurd results. Interpreting the constitutional amendment to provide an absolute right to gun possession would extend that right to, among others, prison inmates, mental incompetents, and minor children. To say the least, prisons, schools, and psychiatric hospitals would become difficult, if not impossible, to administer. While Willis recognizes the "unfavorable" consequences that would result from his interpretation, he implies that the only way to avoid them is by further constitutional amendment. On the contrary, it is our responsibility, when confronted by an ambiguous constitutional provision, to interpret the provision in a manner that avoids absurd results. *See Jackson,* 2003 UT 18 at ¶ 25, 70 P.3d 78. Accordingly, we interpret the grant

of authority to the legislature to regulate the lawful "use" of arms in article I, section 6 of the Utah Constitution to include the ability to restrict convicted felons from possessing firearms.

## CONCLUSION

¶ 17 We affirm the court of appeals' decision. Article I, section 6 of the Utah Constitution grants the legislature the authority to define the lawful use of firearms, which includes the ability to restrict convicted felons from possessing them.

¶ 18 Chief Justice DURHAM, Associate Chief Justice WILKINS, Justice DURRANT, and Justice NEHRING concur in Justice PARRISH'S opinion.