2005 UT 87

Armand L. SMITH, individually and as trustee for the Armand L. Smith, Jr., and Shannon S. Windham Trusts; and Virginia L. Smith, individually, Plaintiffs and Appellees,

v.

PRICE DEVELOPMENT COMPANY, a Utah corporation, nka Fairfax Realty, Inc.; North Plains Land Company, Ltd., a Utah limited partnership; and North Plains Development Company, Ltd., a Utah limited partnership, Defendants.

State Treasurer Edward T. Alter of the State of Utah, for and on behalf of the State of Utah, Additional Rule 19 Defendant and Appellant.

No. 20040675.

Supreme Court of Utah.

Dec. 2, 2005.

Robert S. Campbell, Jennifer Anderson Whitlock, Salt Lake City, for plaintiffs.

Reed L. Martineau, Rex E. Madsen, James S. Jardine, Salt Lake City, for defendants.

Mark L. Shurtleff, Att'y Gen., Kevin V. Olsen, Asst. Att'y Gen., Salt Lake City, for appellant.

PARRISH, Justice:

¶ 1 Following a jury trial, plaintiffs Armand and Virginia Smith obtained a substantial punitive damages award against defendant Fairfax Realty, Inc. The State of Utah claimed a share of the award pursuant to the 1989 version of Utah's split recovery provision, which gave the State an interest in qualifying punitive damages awards. The Smiths challenged the constitutionality of the provision, and the district court ruled in their favor, holding that it effected an unconstitutional taking of the Smiths' property in violation of article I, section 22 of the Utah Constitution and the Fifth and Fourteenth Amendments of the United States Constitution. We agree and affirm.

## FACTUAL BACKGROUND

¶ 2 In 2001, the Smiths obtained a jury verdict against Fairfax.[1] The jury awarded the Smiths $410,000 in compensatory damages, $690,000 in prejudgment interest, and $5,500,000 in punitive damages. On appeal, we affirmed each component of the award except for the prejudgment interest, which we remitted to $597,221. *Smith v. Fairfax Realty, Inc.*, 2003 UT 41, ¶ 49, 82 P.3d 1064

---

1. For a more complete recital of the facts underlying the dispute between the Smiths and Fairfax, see our opinion in *Smith v. Fairfax Realty, Inc.*, 2003 UT 41, ¶¶ 3–11, 82 P.3d 1064.

("*Smith I* "). Fairfax then unsuccessfully petitioned the United States Supreme Court for certiorari review. *Fairfax Realty, Inc. v. Smith,* 541 U.S. 960, 124 S.Ct. 1716, 158 L.Ed.2d 401 (2004).

¶ 3 Though the Smiths were successful in defending the punitive damages award on appeal, they stood to lose a sizeable portion of the award pursuant to the 1989 version of Utah's split recovery provision, Utah Code Ann. § 78–18–1(3) (Supp.1989).[2] That provision gave the State the right to half of the punitive damages in excess of $20,000 in those cases where punitive damages were awarded and paid. *Id.*

¶ 4 The Smiths asserted that the split recovery provision was unconstitutional and asked the district court to join the State as a party so that it could defend the constitutionality of the provision. The district court granted the motion to join the State, and Fairfax paid the Smiths the undisputed portion of the award.[3] The disputed portion was placed in a mutually agreed-upon, interest-bearing depository.

¶ 5 The Smiths sought summary judgment, arguing that they were entitled to the entire punitive award, including the interest that had accrued thereon. They asserted that the split recovery provision effected an unconstitutional taking of their property without just compensation. Alternatively, they argued that the provision violated separation of powers and equal protection principles.

¶ 6 The State defended the constitutionality of the provision, arguing that it was merely a manifestation of the State's power to define the availability of punitive damages. Specifically, the State argued that its interest in the award arose contemporaneously with the entry of the judgment itself and that the Smiths consequently lacked any protectable interest in the disputed funds. It asserted that it did not illegally take the Smiths'

property, but rather merely claimed what it had been awarded in the first instance.

¶ 7 The district court granted the Smiths' motion for summary judgment and declared the split recovery provision unconstitutional. Noting that the provision failed to give the State any interest in either the underlying cause of action or the judgment when it was entered, the district court concluded that the Smiths had a protectable interest in the entire punitive damages award and that the provision effected an unconstitutional taking of that interest. The district court reasoned that accepting the State's argument "would require [the] Court to read something into the statute that simply is not there." The district court's ruling in favor of the Smiths on their takings claim obviated the need to reach their alternative claims.

¶ 8 The district court certified its summary judgment order as final, and the State appealed. We have jurisdiction pursuant to Utah Code section 78–2–2(3)(j) (2002).

## ANALYSIS

¶ 9 "Summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *Norman v. Arnold,* 2002 UT 81, ¶ 15, 57 P.3d 997; *see* Utah R. Civ. P. 56(c). Here, because there are no disputed issues of material fact, we need only review the district court's interpretation of section 78–18–1(3). That interpretation "presents a question of law, which we review for correctness, granting no deference to the [district] court." *Pugh v. Draper City,* 2005 UT 12, ¶ 7, 114 P.3d 546.

¶ 10 On appeal, the State argues that the district court erred in holding the split recovery provision unconstitutional and that the provision did not effect an illegal taking.

---

2. The legislature amended section 78–18–1 in 1991, 2002, and 2004. Both the Smiths and the State agree that the original, 1989 version of the provision governs this appeal. We accordingly base our analysis on the 1989 version, and unless otherwise indicated, all references to the split recovery provision are to that version.

3. That figure included the following components: the initial $20,000 of the punitive damages award; $2,740,000, which represented the punitive damages award reduced by $20,000 and divided in half as the split recovery provision mandated; $517,611.40 in attorney fees incurred during trial; and $672,302.38 in postjudgment interest that had accrued on the undisputed portion of the award to that date.

Although the district court did not reach the separation of powers and equal protection arguments, the State asserts that the split recovery provision passes constitutional muster under these provisions as well. Finally, the State contends that it is entitled to post-judgment interest on the award. We hold that the split recovery provision effected an unconstitutional taking and therefore reach neither the separation of powers argument nor the equal protection argument. Consistent with our holding on the takings claim, we further hold that the State is not entitled to any interest on the disputed portion of the award.

## I. DID SECTION 78–18–1 EFFECT AN UNCONSTITUTIONAL TAKING?

¶ 11 Both the United States and Utah Constitutions contain a prohibition against the taking of private property. Article I, section 22 of the Utah Constitution states that "[p]rivate property shall not be taken or damaged for public use without just compensation." The Fifth Amendment to the United States Constitution, made applicable to the State under the Fourteenth Amendment, *Penn Central Transp. Co. v. New York City*, 438 U.S. 104, 122, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978), contains a similar prohibition. U.S. Const. amend. V (stating that "nor shall private property be taken for public use, without just compensation").

¶ 12 "To recover under article I, section 22 [of the Utah Constitution], a claimant must possess a protectable interest in property that is taken or damaged for a public use." *Bagford v. Ephraim City*, 904 P.2d 1095, 1097 (Utah 1995). The Fifth Amendment analysis is virtually identical. *See Brown v. Legal Found.*, 538 U.S. 216, 233, 123 S.Ct. 1406, 155 L.Ed.2d 376 (2003) (noting that "[w]hen the government physically takes possession of an interest in property for some public purpose, it has a categorical duty to compensate the former owner" (internal quotation marks omitted)).[4]

¶ 13 We analyze whether the split recovery provision effected an unconstitutional taking

in two steps. We first determine whether the Smiths had a protectable interest in the disputed portion of the punitive damages judgment. We then determine whether the Smiths' interest, if any, was "taken" within the meaning of article I, section 22 of the Utah Constitution and the Fifth and Fourteenth Amendments to the United States Constitution.

### A. Did the Smiths Have a Protectable Interest in the Disputed Portion of the Punitive Damages Judgment?

¶ 14 It has long been recognized that rights fixed by judgment are a form of property protected by the takings clause. In the seminal case of *McCullough v. Virginia*, 172 U.S. 102, 123–24, 19 S.Ct. 134, 43 L.Ed. 382 (1898), the United States Supreme Court recognized:

> It is not within the power of a legislature to take away rights which have been once vested by a judgment. Legislation may act on subsequent proceedings, may abate actions pending, but when those actions have passed into judgment the power of the legislature to disturb the rights created thereby ceases.

*Id.*

¶ 15 The first step in our analysis is therefore to determine whether the Smiths had a vested interest in the disputed portion of the punitive damages judgment. Though the district court found that they did, the State argues that the Smiths never acquired any interest in the disputed portion of the judgment because the split recovery provision vested that portion of the judgment in the State. The Smiths, on the other hand, argue that the State's interest in the award arose only when the punitive damages were actually paid.

¶ 16 Our "primary objective" in interpreting the split recovery provision "is to give effect to the legislature's intent." *Gohler v. Wood*, 919 P.2d 561, 562 (Utah 1996). The legislature's intent is manifested by the

---

**4.** It may be more precise to say that our physical takings jurisprudence mirrors the federal system's jurisprudence in that both require the tak-

ing of protected property without just compensation. *Compare* Utah Const. art. I, § 22, *with* U.S. Const. amend. V.

language it employed. *See Green River Canal Co. v. Olds,* 2004 UT 106, ¶ 18, 110 P.3d 666. We may turn to secondary principles of statutory construction or look to a provision's legislative history only if we find the provision ambiguous. *Wilcox v. CSX Corp.,* 2003 UT 21, ¶ 8, 70 P.3d 85; *see also Dep't of Natural Res. v. Huntington–Cleveland Irrigation Co.,* 2002 UT 75, ¶ 13, 52 P.3d 1257 ("Unless a statute is ambiguous, we will not look beyond the plain language of the statute.").

¶ 17 Because the first step in statutory construction is an analysis of the language actually employed by the legislature, we start with the language of the provision itself. *Savage v. Utah Youth Vill.,* 2004 UT 102, ¶ 18, 104 P.3d 1242. The 1989 version of the split recovery provision provides:

> In any judgment where punitive damages are awarded and paid, 50% of the amount of the punitive damages in excess of $20,000 shall, after payment of attorneys' fees and costs, be remitted to the state treasurer for deposit into the General Fund.

Utah Code Ann. § 78-18-1(3). The operative question is whether this language vested the disputed portion of the judgment in the Smiths or in the State.

█ ¶ 18 We conclude that the statutory language gave the State no interest in the judgment entered by the district court. Rather, the State's interest in the disputed portion of the punitive damages award arose only when the judgment was actually "paid." *Id.* By its terms, the provision does not give the State an interest in every punitive damages award. The statutory language directing remittance of punitive damages awards to the State is contingent. It applies only to that class of cases described therein—those cases "where punitive damages are awarded *and* paid." *Id.* In fact, because the specified contingency can be satisfied only when a judgment is paid, the statute gives the State

no interest whatsoever in the underlying judgment. Once a judgment is paid, it is, by definition, satisfied. *Am. Sharecom, Inc. v. LDB Int'l Corp.,* 553 N.W.2d 433, 434 (Minn. Ct.App.1996) ("Once a judgment is satisfied, it ceases to exist...."). The State's only interest, therefore, is one to the *proceeds* of punitive damages judgments. We accordingly conclude that the entire interest in the judgment for punitive damages vested in the Smiths.

¶ 19 Our conclusion is not only consistent with what the statutory provision says, it is also consistent with what the statutory provision does not say. It is significant that the provision contains no language making the State a party to the Smiths' action or a judgment creditor in the Smiths' punitive damages award. There is no language requiring Fairfax to pay the State's share of the Smiths' punitive damages award directly to the State, nor is there language requiring the Smiths to hold the State's share as trustee. The Smiths had dominion and control over the judgment until it was paid. The only plausible conclusion is that the split recovery provision gave the State no interest in the judgment itself. Rather, it gave the State an interest in only the monetary *proceeds* of the Smiths' judgment, an interest that first arose when the judgment was satisfied.

█ ¶ 20 The State suggests that we disregard both the contingent structure of the provision and the plain meaning of the term "paid" in order to give effect to the "reason, spirit and sense of the legislation." It argues that the word "paid" speaks to the timing of any remittance to the State, not to the vesting of the State's interest. To support this construction, the State urges us to consider secondary evidence of the legislature's intent. Specifically, it points to the legislative history of the provision, to the caption of the provision, and to the legislature's subsequent amendment of the provision.[5] While the

---

5. As noted above, the split recovery provision has undergone numerous amendments since 1989. It currently provides:

   (a) In any case where punitive damages are awarded, *the judgment shall provide* that 50% of the amount of the punitive damages in ex-

cess of $20,000 shall, after an allowable deduction for the payment of attorneys' fees and costs, *be remitted by the judgment debtor to the state treasurer for deposit into the General Fund.*

    ....

State's arguments are plausible in the abstract, they are not grounded in the provision's plain language. Because there is only one plausible interpretation of the actual statutory language, it is unambiguous, *see State v. Willis,* 2004 UT 93, ¶ 12, 100 P.3d 1218, and we may not consider the secondary evidence advanced by the State, *Funk v. Utah State Tax Comm'n,* 839 P.2d 818, 820 (Utah 1992) (stating that we may rely on captions as interpretative tools only when the statutory text is ambiguous).

¶ 21 The State also defends the provision by invoking the mantra that it is our duty to presume the validity of legislative enactments and therefore to "resolve any reasonable doubts in favor of constitutionality." *Willis,* 2004 UT 93, ¶ 4, 100 P.3d 1218. Only reasonable doubts, however, can be resolved in favor of constitutionality. So while the State urges us to rewrite the statute under the guise of statutory "interpretation," we must resist the urge to infringe on the legislative domain.

¶ 22 As previously discussed, the 1989 version of the split recovery provision limits the State's interest in punitive damages awards to those cases where "punitive damages are awarded and paid." Utah Code Ann. § 78–18–1(3). From this language, the State invites us to hold that it has a vested interest in half the amount of judgment creditors' punitive damages judgments. It asks us to do this in spite of (1) language explicitly stating that the appropriate amount need be "remitted" only after the punitive damages are "awarded and paid"; (2) a complete lack of any language giving the State such an interest, making the judgment creditor a trustee of the State's share, or even suggesting that the State may seek to enforce the judgment or claim the right to initial payment of such awards; and (3) the contingent nature of the State's interest.

(c) *The state shall have all rights due a judgment creditor* until the judgment is satisfied, and stand on equal footing with the judgment creditor of the original case in securing a recovery.

Utah Code Ann. § 78–18–1(3)(a), (c) (Supp.2005) (emphasis added). We recognize that the current version of the split recovery provision requires

¶ 23 The radical change the State prescribes would undoubtedly make the split recovery provision more constitutionally appealing. But only the legislature, not this court, can effect such a transformation. Although we must "resolve any reasonable doubts in favor of constitutionality," *Willis,* 2004 UT 93, ¶ 4, 100 P.3d 1218, we also must adhere to our role as interpreters, not drafters, of legislation. *See Bd. of Educ. v. Salt Lake County,* 659 P.2d 1030, 1037 (Utah 1983) (noting that, while we "will continue to exercise [our] authority to interpret the law," we will "refrain from assuming the legislature's task of writing it"). The State essentially asks us to redraft the provision, inserting language that the legislature did not and removing language that the legislature selected, all to arrive at an interpretation that, in our opinion, says the opposite of the plain language the legislature actually employed. Our duty to construe statutory provisions to avoid holding them unconstitutional does not extend this far, and we refuse to engage in the drastic rehabilitation the State requests.

¶ 24 Although we base our decision in this case on the plain language of the Utah provision, we pause to address the parties' arguments with respect to case precedent from other jurisdictions. We acknowledge that a number of courts in our sister states have upheld the constitutionality of split recovery provisions. Unlike the Utah provision at issue here, however, each of those respective provisions gave the state an interest in the underlying punitive damages judgments. *See, e.g., Cheatham v. Pohle,* 789 N.E.2d 467, 470 (Ind.2003) (requiring judgment debtors to "pay the punitive damage award to the clerk of the court where the action is pending"); *Fust v. Att'y Gen.,* 947 S.W.2d 424, 431 (Mo.1997) (stating that state's portion of punitive damages award be deemed rendered in favor of the state); *DeMendoza v. Huffman,* 334 Or. 425, 51 P.3d 1232, 1235 (2002) (requiring payment of the state's portion di-

the judgment debtor to pay the State's share directly to the State treasurer and makes the State a judgment creditor. While we acknowledge that such attributes, if present in the 1989 version of the provision, would dramatically affect our analysis, we need not, and do not, opine on the constitutionality of the current version of the split recovery provision.

rectly to the state and explicitly giving the state judgment creditor status).[6]

¶ 25 We find it persuasive that the 1989 version of Utah's split recovery provision is akin to the provision the Colorado Supreme Court struck down in *Kirk v. Denver Publishing Co.*, 818 P.2d 262 (Colo.1991). The ill-fated provision in *Kirk* stated:

"One-third of all reasonable damages collected pursuant to this section shall be paid into the state general fund. The remaining two-thirds of such damages collected shall be paid to the injured party. Nothing in this subsection (4) shall be construed to give the general fund any interest in the claim for exemplary damages or in the litigation itself at any time prior to payment becoming due."

*Id.* at 266 (quoting Colo.Rev.Stat. § 13–21–102(4) (1987)). The Colorado court noted that the provision, like the provision we address here, gave the state no "interest in the judgment prior to collection." *Id.* at 273. And we see little difference between the Colorado provision's explicit renunciation of such an interest and the failure of Utah's split recovery provision to provide for such an interest. Like Utah's 1989 version of the split recovery provision, the Colorado provision gave the state an "interest ... not in the judgment itself but in the monies collected on the judgment, and that interest [arose] only at a point in time after the judgment creditor's property interest in the judgment has vested by operation of law." *Id.* at 272. That fact made the state's interest more of a "statutory imposition of [a] forced contribution on the person injured by the wrongful conduct," *id.* at 273, than a constitutionally permissible means of prospectively limiting the availability of punitive damages. In short, Utah's split recovery provision is, for all intents and purposes, identical to the provision invalidated by the Colorado Supreme Court. We therefore hold that the 1989 ver-

sion of Utah's split recovery provision did not grant the State any interest in the Smiths' punitive damages judgment. Rather, the State's interest was limited to an interest in the monetary proceeds of that award.

¶ 26 Our conclusion that the State's interest in the Smiths' award was limited to an interest in the monetary *proceeds* of the judgment, rather than an interest in the judgment itself, leads to the conclusion that the Smiths owned the entire punitive damages judgment. The Smiths, not the State, had standing to defend the validity of the judgment and to enforce it as well. When the judgment was satisfied, the Smiths obtained a "completed, consummated right" to the proceeds. In short, they had a vested property interest therein. *See Banks v. Means*, 2002 UT 65, ¶ 12 n. 3, 52 P.3d 1190 (noting that a vested interest is one "that has become a completed, consummated right for present or future enjoyment" (internal quotation marks omitted)). Such vested rights are protectable property interests for purposes of a takings analysis. *See Jones v. Hardesty*, 261 Ark. 716, 551 S.W.2d 543, 546 (1977); *Cleek v. Va. Gold Mining & Milling Co.*, 63 Idaho 445, 122 P.2d 232, 237 (1942).

¶ 27 The State advances two arguments in an attempt to avoid this conclusion. First, it asserts that because plaintiffs have no vested right to punitive damages, the legislature was free to prospectively limit the availability of these damages. Second, it suggests that the mere existence of the split recovery provision precludes the Smiths from claiming a protectable interest in the award because it would be inherently unreasonable for the Smiths to claim a protectable property interest in something they knew they would eventually have to forfeit. We find neither argument persuasive.

¶ 28 With respect to the first argument, we do not dispute the State's premise that the

---

6. Alaska's split recovery provision, and the Alaska Supreme Court's treatment of it, is admittedly anomalous. In *Evans v. State*, 56 P.3d 1046, 1057–59 (Alaska 2002), the Alaska Supreme Court affirmed a trial court's decision upholding the facial constitutionality of a split recovery provision that did "not grant the state the right to file or join a civil action to recover punitive damages." Alaska Stat. § 09.17.020(j) (Michie

1997). *Evans* is without precedential value because the court was evenly divided, with two justices voting to affirm the trial court and two voting to reverse. In Alaska, a split opinion results in an affirmance of the trial court's decision, *Thoma v. Hickel*, 947 P.2d 816, 824 (Alaska 1997), but such affirmances have no precedential effect, *City of Kenai v. Burnett*, 860 P.2d 1233, 1239 n. 11 (Alaska 1993).

legislature may prospectively limit the availability of punitive damages awards. But that is not what occurred here. This case requires us to address neither the nature of punitive damages nor the legislature's power to abolish them. Instead, it raises the question of whether the State may assert an interest in the proceeds of the Smiths' punitive damages judgment.

¶ 29 With respect to the second argument, notice that the State plans to unconstitutionally take an individual's property does not vitiate his interest in that property. If accepted, such an argument would improperly elevate the mere existence of the split recovery provision over its actual language, which, as we have already concluded, gave the Smiths a protectable interest in the entire judgment.

B. *Did the Split Recovery Provision Allow the State to Unconstitutionally Take the Smiths' Property?*

■ ¶ 30 Having concluded that the Smiths had a protectable property interest in the entire punitive damages award, we now assess whether the split recovery provision effected an unconstitutional taking of that interest. Because taking the Smiths' money denied them the use of that money, it constituted a taking for which just compensation is constitutionally required. *See Bagford,* 904 P.2d at 1097; *Colman v. Utah State Land Bd.,* 795 P.2d 622, 626 (Utah 1990) (noting that "a taking is any substantial interference with private property which destroys or materially lessens its value, or by which the owner's right to its use and enjoyment is in any substantial degree abridged or destroyed" (internal quotation marks omitted)). The split recovery provision is therefore unconstitutional.

II. IS THE STATE ENTITLED TO POSTJUDGMENT INTEREST ON THE PUNITIVE DAMAGES AWARD?

¶ 31 The State argues that it is entitled to the postjudgment interest that has accrued on the disputed portion of the punitive damages award. This argument, however, is premised on the assumption that the disputed portion of the award belongs to the State. Our conclusion that the disputed portion of the award actually belongs to the Smiths vitiates the State's claim. Because the postjudgment interest accrued on the Smiths' money, the Smiths are entitled to that interest.

### CONCLUSION

¶ 32 The 1989 version of the split recovery provision did not give the State a vested interest in the Smiths' punitive damages award. Accordingly, it effected an unconstitutional taking of the Smiths' property because it allowed the State to appropriate a portion of the Smiths' award without providing concomitant compensation. Our conclusion on this point obviates the need for us to consider the Smiths' alternative arguments with respect to the constitutionality of the provision. We therefore affirm the judgment of the district court.

¶ 33 Chief Justice DURHAM, Associate Chief Justice WILKINS, Justice DURRANT, and Justice NEHRING concur in Justice PARRISH'S opinion.