2006 UT 17

**STATE of Utah, Plaintiff and Petitioner,**

v.

**Jeffrey Don IRELAND, Defendant and Respondent.**

No. 20050279.

Supreme Court of Utah.

March 10, 2006.

Mark L. Shurtleff, Att'y Gen., Jeffrey S. Gray, Asst. Att'y Gen., Salt Lake City, for plaintiff.

Debra M. Nelson, Lisa J. Remal, Salt Lake City, for defendant.

DURRANT, Justice:

## INTRODUCTION

¶ 1 For a Utah court to have jurisdiction over a defendant, the charged offense must have been committed, at least partly, within the state.[1] In this case, Jeffrey Don Ireland was charged with unlawful possession or use of a controlled substance [2] based exclusively on the fact that he tested positive for the existence of methamphetamines in his bloodstream. We are asked to determine whether the existence of methamphetamines in Ireland's bloodstream conclusively showed that Ireland possessed or used a controlled substance within the state.

¶ 2 Utah Code section 58–37–2(1)(dd),[3] which defines terms used in the Utah Con-

---

1. Utah Code Ann. § 76–1–201(5)(c) (Supp.2005).

2. *Id.* § 58–37–8(2)(a)(i) (Supp.1999) (current version at Utah Code Ann. § 58–37–8(2)(a)(i) (Supp. 2005)).

3. *Id.* § 58–37–2(1)(dd) (1998) (current version at Utah Code Ann. § 58–37–2(1)(ff) (Supp.2005)).

trolled Substance Act,[4] includes "consumption" of a controlled substance within its definition of "use." The answer to whether the district court had jurisdiction over Ireland turns on the definition of "consumption." If we conclude that "consumption" includes the metabolization of a controlled substance, the existence of methamphetamines in the bloodstream is itself a violation of the Utah Controlled Substance Act, and the district court clearly had jurisdiction over Ireland because that violation occurred within Utah. If the definition of "consumption" is limited to the introduction of a controlled substance into the body, the existence of methamphetamines in the bloodstream is not conclusive evidence that an offense was committed within Utah, and the State must present additional evidence to establish that the district court has jurisdiction over the defendant.

¶ 3 We conclude that the Legislature did not intend the term "consumption" to include metabolization of a controlled substance because it did not explicitly criminalize such behavior, as it has in related statutes. As we conclude that the Legislature did not intend "consumption" to include the metabolization of controlled substances, we need not address Ireland's argument that criminalizing the metabolization of controlled substances violates the Eighth Amendment to the United States Constitution.

## BACKGROUND

¶ 4 This case arises from an automobile collision in which Ireland's vehicle struck another vehicle, killing its driver. When police officer Scott Buchanan went to the hospital to question Ireland about the accident, he noticed that Ireland's pupils were constricted, his eyelids were droopy, his movements were slow and clumsy, he had muscle tremors in his legs, he swayed from side to side, he complained that his mouth was dry, and his speech was slow, slurred, and raspy. Be-

lieving that these symptoms evidenced narcotic use, Officer Buchanan obtained a search warrant to test Ireland's blood. A test of the blood sample, which was taken more than five hours after the accident, revealed a methamphetamine level of 0.1 micrograms per milliliter and a marijuana metabolite level of 6 nanograms per milliliter.

¶ 5 Ireland was subsequently charged under Utah Code section 58–37–8(2)(a)(i) [5] with unlawful possession or use of methamphetamine, a third degree felony, and under section 41–6–44.6 [6] with driving with measurable marijuana in the body, a class B misdemeanor. The State moved for a pretrial ruling on jurisdiction, arguing that the presence of methamphetamines in Ireland's bloodstream conclusively established that Ireland had possessed or used methamphetamines within the state. In so arguing, the State contended that "consumption" was an ongoing process of metabolization. The district court agreed, construing "consumption" as the ongoing process in which the body physiologically metabolizes the substance. The court concluded that Ireland had used a controlled substance within Utah and that it therefore had jurisdiction. Ireland then entered a conditional plea of guilty to both charges, reserving the right to appeal the district court's decision regarding jurisdiction.

¶ 6 On appeal, the court of appeals reversed the district court's jurisdictional conclusion, holding that "consumption" did not include metabolization but instead was a catchall term encompassing any form of ingestion.[7] The court of appeals reasoned that the list of nouns utilized by the statute— "application, inhalation, swallowing, injection, or consumption"—indicates that "consumption" is a "present tense nominal describing the introduction of a substance into the body, and not an ongoing metabolic process." [8] In reaching this result, the court of appeals looked at dictionary definitions of "consump-

---

4. *Id.* §§ 58–37–1 to –21.

5. Utah Code Ann. § 58–37–8(2)(a)(i) (Supp.1999) (current version at Utah Code Ann. § 58–37–8(2)(a)(i) (Supp.2005)).

6. *Id.* § 41–6–44.6 (Supp.2001) (current version at Utah Code Ann. § 41–6a–517 (2005)).

7. *State v. Ireland,* 2005 UT App 22, ¶ 19, 106 P.3d 753.

8. *Id.* ¶¶ 9, 11 (internal quotation marks omitted).

tion," other sections of the Utah Code that used the term "metabolite" in connection with controlled substances, statutes from other states defining consumption narrowly, and cases from Utah and other states that have defined possession in a way that does not include the existence of controlled substances in the bloodstream.[9] The court of appeals further reasoned that a broad definition of "consumption" would render the possession or use subsection unconstitutional because it "would subject 'status criminals' ... to continuous guilt for possession or use of a controlled substance, 'whether or not [they had] ever used or possessed any narcotics within the State.' "[10]

▮ ¶7 We granted certiorari to review the court of appeals' decision. On certiorari, we "review the decision of the court of appeals and not that of the district court."[11] We review the decision for correctness, granting no deference to the court of appeals.[12] We have jurisdiction pursuant to Utah Code section 78-2-2(5) (2002).

## ANALYSIS

¶8 In this case, we are asked to determine whether the district court had jurisdiction over Ireland's possession or use charge based exclusively on the fact that methamphetamines were found in his bloodstream. We conclude that the existence of methamphetamines in the bloodstream alone is insufficient to show that a defendant violated the possession or use subsection within the state.

¶9 In Utah, a judge may determine that the court has jurisdiction over a defendant if the State shows, by a preponderance of the evidence, "that the offense was committed either wholly or partly within the borders of the state."[13] Subsection (2)(a)(i) (the "pos-

session or use subsection") of Utah Code section 58-37-8, which defines violations of the Utah Controlled Substance Act, makes it an offense for any person to "knowingly and intentionally ... possess or use a controlled substance, unless it was ... otherwise authorized."[14] "Possession" or "use" is defined within the Utah Controlled Substance Act as the "ownership, control, occupancy, holding, retaining, belonging, maintaining, or the application, inhalation, swallowing, injection, or consumption ... of controlled substances."[15]

¶10 The State argues that the district court had jurisdiction with respect to Ireland's possession or use charge because the existence of a controlled substance in Ireland's bloodstream was itself "consumption" of a controlled substance that occurred within the state. Ireland argues that the district court did not have jurisdiction over his unlawful possession or use charge because the State failed to offer proof that he "possess[ed]" or "use[d]" a controlled substance in the State of Utah. In so arguing, Ireland contends that "consumption" does not include the ongoing process by which the body physiologically metabolizes the substance, but instead is limited to the act of introducing a controlled substance into the body.

▮ ¶11 In determining the scope of "consumption," our "primary objective" is "to give effect to the legislature's intent," which is "manifested by the language it employed" in the statute.[16] Only if we find the statutory language to be ambiguous may we turn to secondary principles of statutory construction or look to the statute's legislative history.[17]

¶12 As noted above, the statute in question here is section 58-37-2(1)(dd), which in-

9. *Id.* ¶¶ 10, 12-14.

10. *Id.* ¶20 (quoting *Robinson v. California*, 370 U.S. 660, 668, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962)) (second alteration in original).

11. *State v. Brake*, 2004 UT 95, ¶11, 103 P.3d 699.

12. *Id.*

13. Utah Code Ann. § 76-1-201(5)(c), (8) (Supp. 2005).

14. *Id.* § 58-37-8(2)(a)(i) (Supp.1999) (current version at Utah Code Ann. § 58-37-8(2)(a)(i) (Supp.2005)).

15. *Id.* § 58-37-2(1)(dd) (1998) (current version at Utah Code Ann. § 58-37-2(1)(ff) (Supp.2005)) (emphasis added).

16. *Smith v. Price Dev. Co.*, 2005 UT 87, ¶16, 125 P.3d 945 (internal quotation marks omitted).

17. *Id.*

cludes the "consumption" of controlled substances within its definition of practices that are unlawful under the possession or use subsection.[18] The definition of "consumption," however, is not clear from the plain language of that statute. "Consumption" is not defined by the possession or use subsection nor any section of the Utah Code. The dictionary defines "consumption" as "the act or process of consuming," which includes "to do away with completely," "to spend wastefully," to "use up," "to eat or drink," "to engage fully" or to "waste or burn away."[19] Under this definition, the interpretations asserted by both the State and Ireland are reasonable. On one hand, the "to eat or drink" definition supports Ireland's interpretation that "consumption" is a method of ingestion. On the other hand, the "to waste or burn away" definition supports the State's construction that "consumption" includes the metabolic process.

¶ 13 As we conclude that the term "consumption" is ambiguous, we look to the canons of statutory construction to determine what meaning the Legislature intended.[20] Ireland contends that "consumption" is a catchall term encompassing novel methods of ingestion. In support of this interpretation, Ireland implicitly relies on the ejusdem generis canon of statutory construction, which provides that when a statute contains a list of specific words that relate to a certain type of item and those words are followed by a general word, the general word should be "construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words."[21] In particular, Ireland argues that because each of the terms preceding "consumption" in the defini-

tion of "use"—application, inhalation, swallowing, and injection—describes a method of introducing a substance into the body, the term "consumption" must also be a method of introducing substances into the body and should be construed as a catchall term encompassing any other method of introducing substances into the body.

¶ 14 The State relies, however, on another canon of statutory construction that requires every word of a statute to be given effect so that no part of the statute will be inoperative or superfluous. Under this canon, when "the specific words embrace all the . . . objects of the class designated by the enumeration, the general words take a meaning beyond the class."[22] The State argues that the enumerated terms preceding "consumption" exhaust the possible methods of ingestion and that "consumption" must, therefore, mean something additional, otherwise the term would be superfluous.

¶ 15 The State's reliance on this canon of construction is misplaced for two reasons. First, to apply this canon, we must find that the terms preceding "consumption" exhaust the possible methods of introducing a substance into the body. Admittedly, it is difficult to think of methods of ingestion that are not enumerated in the statutory definition of "use." But at least one example exists: insertion, such as through a suppository.

¶ 16 Second, and more fundamentally, the primary goal of statutory construction is to determine legislative intent.[23] No canon of construction can be used to construe a statute in a way that is inconsistent with legislative intent.[24] By looking, as we must,[25]

---

18.  See supra ¶ 2.

19.  Merriam–Webster's Collegiate Dictionary 249 (10th ed.1998).

20.  See Eaquinta v. Allstate Ins. Co., 2005 UT 78, ¶ 9, 125 P.3d 901 (applying canons of statutory construction to determine legislative intent).

21.  2A Norman J. Singer, Statutes and Statutory Construction § 47:17, at 273–74 (6th ed.2001).

22.  Id. § 47:21, at 295.

23.  State v. Maestas, 2002 UT 123, ¶ 52, 63 P.3d 621.

24.  Singer, supra note 21, § 46:07, at 201 ("The literal interpretation of the words of an act should not prevail if it creates a result contrary to the apparent intention of the legislature and if the words are sufficiently flexible to allow a construction which will effectuate the legislative intention.").

25.  See Lieber v. ITT Hartford Ins. Ctr., Inc., 2000 UT 90, ¶¶ 7–10, 15 P.3d 1030 (interpreting a statute in accordance with legislative intent by examining the plain language of the statute as a whole, as well as enactments relating to the same subject).

at statutes relating to the same subject as the possession or use subsection, it is apparent that the Legislature did not intend "consumption" to include metabolization.

¶ 17 Most significantly, the Legislature has explicitly referred to the existence of controlled substances in the bloodstream in at least eight other statutes.[26] Each of these statutes contains language that refers to the existence of the drug or metabolites of the drug in the person's body. For example, under Utah Code section 41–6a–517[27], it is unlawful for a person to operate a motor vehicle "if the person has any measurable controlled substance or metabolite of a controlled substance in the person's body." We assume that, had the Legislature wanted to include the metabolization of controlled substances as a violation of the possession or use subsection, it would have done so explicitly.

¶ 18 This assumption is bolstered by the fact that the Legislature has subsequently amended the very statute now at issue, Utah Code section 58–37–8, to do precisely that. The statute now explicitly provides that a defendant violates the possession or use sub-

section "by knowingly and intentionally having in his body *any measurable amount of a controlled substance.*"[28] We note that neither party has argued that subsequent amendments to Utah Code section 58–37–8 [29] apply retroactively to Ireland's possession or use charge. Our analysis of the possession or use subsection is accordingly based on the version of the statute under which Ireland was charged, Utah Code section 58–37–8(2)(a)(i) (Supp.1999), and obviously would likely be different if we were to interpret the current version of the statute.

¶ 19 Furthermore, defining "consumption" as a method of introducing controlled substances into the body is consistent with the definitions of "consumption" applied by other jurisdictions.[30] At least five states, via statute or case law, have limited the definition of "consumption," or some derivative thereof, to methods of introducing a controlled substance into the body.[31] The State has not presented us with any caselaw or statutes that support including metabolization within the definition of "consumption."

26. *See* Utah Code Ann. §§ 41–6a–517(2), –520(1)(a)(iii), –525(2)(c) (2005) (dealing with driving while under the influence of drugs or alcohol); *id.* §§ 53–3–220(1)(a)(xiii), –223(1)(a) (Supp.2005) (driver licensing); *id.* §§ 34–41–101(2), –102(2), 34A–2–302(4)(a)(i) (maintaining drug-free workplaces).

27. Utah Code Ann. § 41–60–517 (2005).

28. Utah Code Ann. § 58–37–8 (Supp.2005).

29. Automobile Homicide Amendments, ch. 10, § 1, 2003 Utah Laws 203, 204; Amendments to Controlled Substance Act, ch. 33, § 6, 2003 Utah Laws 302, 315–17; Unlawful Controlled Substances In Correctional Facilities, ch. 36, § 1, 2004 Utah Laws 182, 182–84; Drug Offense Penalty Enhancements, ch. 30 § 1, 2005 Utah Laws 390, 390–92.

30. *State v. Wanosik*, 2003 UT 46, ¶ 23, 79 P.3d 937 (noting that when a term is not defined by statute and its meaning is unclear, a court may "look to other jurisdictions with similar language for guidance").

31. *See* Mich. Comp. Laws. § 768.37(3)(b) (2005) (defining "consumed" as "to have eaten, drunk, ingested, inhaled, injected, or topically applied, or to have performed any combination of those actions, or otherwise introduced into the body");

Or.Rev.Stat. § 475.984(3)(c) (2003) (defining "ingest" as "to consume or otherwise deliver a controlled substance into the body of a person"); Tex. Health & Safety Code Ann. § 481.002(21) (Vernon 2005) (defining "human consumption" as "the injection, inhalation, ingestion, or application of a substance to or into the body"); *State v. Abu–Shanab*, 448 N.W.2d 557, 559 (Minn.Ct.App.1989) (" '[C]onsume,' in the context of alcoholic beverages, means to drink, and ... once drunk, alcohol is no longer being consumed."); *State v. Hornaday*, 105 Wash.2d 120, 713 P.2d 71, 76 (1986) ("[T]he terms 'consume' and 'possession' ... do not include the stage at which the liquor has already been swallowed but is still being assimilated by the body.") *superseded by statute on other grounds as stated in State v. Silva*, 1999 WL 89119, *2 1999 Wash.App. LEXIS 297, *7 n. 9; *see also State v. Flinchpaugh*, 232 Kan. 831, 659 P.2d 208, 211 (1983) (limiting the definition of "possession or control" as to not include "[e]vidence of a controlled substance after it is assimilated in a person's blood"); *State v. Sorenson*, 758 P.2d 466, 468 (Utah Ct.App.1988) (noting in dicta that the trial court had held "the mere presence of alcohol on the breath or in the bloodstream does not constitute possession" under a statute that prohibits any person under the age of 21 from purchasing, possessing, or consuming alcohol and stating that such a position is "consistent with well-reasoned decisions from other jurisdictions which have addressed the issue").

¶ 20 For these reasons, we conclude that the Legislature intended "consumption" to be a catchall term encompassing all methods of introducing controlled substances into the body. Indeed, it is a "common drafting technique" for a legislature to list a number of specific terms followed by a general term, which is intended to encompass items or actions of the same nature as the enumerated terms.[32] This technique relieves "the legislature from spelling out in advance every contingency in which the statute could apply." [33]

¶ 21 Although we conclude that the existence of a controlled substance in the bloodstream is not itself a violation of the possession or use subsection, the State may nevertheless present evidence of a controlled substance in the bloodstream, along with other evidence, to establish that the district court has jurisdiction over such a charge.[34]

## CONCLUSION

¶ 22 We conclude that "consumption," as used in the possession or use subsection, is a catchall phrase for methods of introducing a substance into the body. It does not include mere metabolization of the controlled substance. Accordingly, we hold that the existence of any measurable amount or metabolites of methamphetamines alone is insufficient to show that Ireland possessed or used a controlled substance within the State of Utah. We therefore affirm the court of appeals' judgment and remand to the district court for further proceedings consistent with this opinion.

¶ 23 Chief Justice DURHAM, Associate Chief Justice WILKINS, Justice PARRISH, and Justice NEHRING concur in Justice DURRANT's opinion.

32. Singer, *supra* note 21, § 47:17, at 281–82.

33. *Id.*

34. *See* Utah Code Ann. § 76–1–201(1) (Supp. 2005) ("A person is subject to prosecution in this state for an offense which he commits ... if ... the offense is committed either wholly or partly within the state ...."); *id.* § 76–1–501(3) ("[T]he existence of jurisdiction ... shall be established by a preponderance of the evidence.").